Lynette KINSMAN, Plaintiff and Respondent,

v.

John Lee KINSMAN, Defendant and Appellant.

No. 860051–CA.

Court of Appeals of Utah.

Jan. 12, 1988.

Brad L. Swaner (argued), Salt Lake City, for defendant and appellant.

David S. Dolowitz (argued), Parsons, Behle & Latimer, Salt Lake City, for plaintiff and respondent.

Before JACKSON, BENCH and DAVIDSON, JJ.

## OPINION

DAVIDSON, Judge:

Defendant appeals from the order and judgment modifying a decree of divorce. The modification was based on a significant change in circumstances and awarded ali-

mony to plaintiff for a period of five years. The decree of divorce, however, provided that neither party was entitled to alimony.

The parties were married for approximately three years with no children born to the union. Both parties brought substantial assets into the marriage. The provisions of the decree of divorce were largely adopted from a settlement agreement executed on July 13, 1982, in which the parties stipulated to waive alimony.[1]

The decree of divorce divided the marital property and adjusted the financial burdens pursuant to the terms of the stipulation. Defendant was ordered to assume certain payments which relieved plaintiff of specific debts and obligations apparently with the intent of restoring plaintiff to her earlier financial position. Within nine months after the divorce, defendant had filed for business and personal bankruptcy and ceased making payments for the benefit of plaintiff thus causing her to assume those financial responsibilities.

The trial judge found a significant change of circumstances caused by the bankruptcy of defendant and on that basis awarded alimony to plaintiff. Defendant filed this appeal questioning the award after an express waiver of the right to receive alimony.

In her brief, plaintiff seeks further modification of the order to delete the durational limitation on the alimony award. Plaintiff also requests that she be awarded costs and attorney fees in accordance with the settlement agreement of July 13, 1982. Because plaintiff did not file a timely and proper cross appeal, we will not now address these issues raised for the first time in her appellate brief. *Matter of Estate of Lewis,* 738 P.2d 617 (Utah 1987).

At the time the decree was modified, Utah Code Ann. § 30-3-5(1) (1984) provided that: "The court shall have continuing jurisdiction to make such subsequent changes or new orders with respect to the support

1. Paragraph 19 of the parties' stipulation and settlement agreement reads as follows:

"The parties hereby stipulate and agree that each party is a fit and employable person capa-

ble of supporting himself and herself respectively and that neither party is entitled to alimony and both parties hereby waive the same now and forever."

and maintenance of the parties...." However, a party who brings an action to modify a divorce decree "must initially show that a substantial change in the circumstances of at least one of the parties has occurred." *Jeppson v. Jeppson,* 684 P.2d 69, 70 (Utah 1984), and cases cited therein. The court found such a change and based its decision on that change. But, to base the award of alimony on changed circumstances ignores the finality of the terms of the stipulation which should only be overturned "with great reluctance and for compelling reasons." *Land v. Land,* 605 P.2d 1248, 1251 (Utah 1980).

■ We decline to hold that a change of circumstances can overcome a knowing and specific waiver in a stipulation.[2] When the facts of this case are examined, however, two alternate theories for relief are presented. Neither of these theories was presented to the trial court. However, "we may affirm a trial court's decision on proper grounds even though different than those relied upon by the trial court." *Branch v. Western Petroleum Inc.,* 657 P.2d 267, 276 (Utah 1982).

■ In *Beckmann v. Beckmann,* 685 P.2d 1045 (Utah 1984), the Utah Supreme Court examined a situation very similar to this case. Defendant was discharged in bankruptcy subsequent to a divorce decree in which he was ordered to make payments on debts and to hold his wife harmless from them as described in a settlement agreement adopted by the court. At the hearing on his order to show cause, defendant argued that he had been discharged from liability. The trial court found the debts were in the nature of alimony, maintenance and support and, as such, were not dischargeable in bankruptcy. The Utah Supreme Court affirmed. In the instant case, the trial court was not asked to address the issue of whether or not the obligations were in the nature of alimony, maintenance and support. It is probable that such an examination would place at least some of defendant's obligations to plaintiff in the above category.[3]

■ Affirmance is based on a contract theory. These parties negotiated and agreed upon terms to settle their divorce action and entered into a stipulation incorporating those terms. A stipulation is an enforceable agreement if it meets the requirements of formality outlined in *Brown v. Brown,* 744 P.2d 333 (Utah App.1987). Among other terms, defendant specifically agreed to assume and pay certain debts for the benefit of plaintiff. Plaintiff agreed to waive any right to receive alimony "now and forever." Plaintiff's promise, however, was conditioned on the performance by defendant of paying the agreed bills. His performance was required as a condition precedent to plaintiff's waiver of ali-

---

**2.** To hold that a change of circumstances can overcome a stipulation in all cases, as the concurrence suggests, opens the door to abuse. Nothing would prevent a party from negotiating a favorable settlement in exchange for a waiver of alimony and sometime later, having enjoyed the benefit of the agreement and having dissipated the assets awarded, coming back to court to obtain alimony on a change of circumstances. Such a rule would encourage fraud and deception and would eliminate the efficacy of stipulated settlements. All divorces would be contested in the hope of establishing finality and preventing future litigation over those matters established in court.

**3.** To determine whether a debt is in the nature of alimony, maintenance and support and therefore non-dischargeable, the court first looks to the divorce decree creating the debt. From the decree and the circumstances resulting in the decree the court can determine the nature of the debt. The court then looks at the circumstances of the petitioner at the time of the petition and may then determine that those circumstances still require a finding of non-dischargeability. The test to be applied at both stages is "if without the debt assumption, the spouse would be inadequately supported, the debt assumption was meant to be support." *Holt v. Holt,* 672 P.2d 738, 743 (Utah 1983) quoted in *Beckmann,* 685 P.2d at 1050. As is further pointed out, "To enforce the general purpose of the bankruptcy laws in providing relief for the debtor, the test announced in *Holt v. Holt, supra,* must be passed at the time the debt was imposed in the divorce decree and again at the time the discharge of the debt is attempted." *Id.* This test could easily have been applied to the decree and the facts in this case. If the debts were found to be non-dischargeable, defendant would remain obligated for payment. The decree would be left undisturbed and either the creditors or the plaintiff could enforce defendant's obligation to pay.

mony in the future. When defendant willfully avoided his required performance through bankruptcy, he failed to perform the condition precedent. *See Stewart v. Underwood,* 704 P.2d 275, 278 (Ariz.App. 1985) (discharge in bankruptcy does not constitute payment of the debt.) Having failed to perform, he now seeks to enforce the agreement against plaintiff. Such a result will not be tolerated. Failure of a material condition precedent relieves the other party of any obligation to perform. *Fischer v. Johnson,* 525 P.2d 45 (Utah 1974). The stipulated agreement is no longer enforceable against plaintiff. The court is placed in the position as if there had been no agreement and no distribution of property. The court should look to the present condition and needs of the parties and enter judgment accordingly. This is exactly what the trial court did in making the award of alimony.

This Court will not disturb the trial court's award of alimony unless a clear and prejudicial abuse of discretion has been shown which is not the case herein. *Eames v. Eames,* 735 P.2d 395, 397 (Utah App.1987); *Petersen v. Petersen,* 737 P.2d 237 (Utah App.1987).

The order and judgment modifying decree of divorce is affirmed. Costs on appeal against defendant.

BENCH, J., concurs.

JACKSON, Judge (concurring in result only):

Our state legislature significantly amended Utah Code Ann. § 30–3–5 in 1969. Twelve years later, our supreme court gave us *Georgedes v. Georgedes,* 627 P.2d 44 (Utah 1981), recognizing the language added to the statute. Now, Judge Rigtrup has given us a decision in *Kinsman* based upon *Georgedes.* The main opinion neglects any analysis of the statute or *Georgedes,* despite the fact that the meaning of the statute's change in 1969 has been directly posed to us in this appeal. I would affirm the lower court's decision as follows.

The parties were married in August of 1979 and divorced by a Third District Court decree entered August 24, 1982. The basic provisions of the decree were adopted from a written agreement of the parties. Neither party was awarded alimony. Mr. Kinsman agreed to assume and pay substantial obligations, including joint debts and personal bills of Mrs. Kinsman. His payments would free her $10,000.00 savings certificate, which had been pledged as collateral for a joint obligation, provide her $5,000.00 in cash, and clear purchase and mortgage obligations on her residence.

Within eight months of the decree, Mr. Kinsman voluntarily filed personal bankruptcy and obtained discharge of the obligations he had agreed to pay in the divorce action. His discharge included his direct, stipulated contractual obligations to Mrs. Kinsman, which were specifically scheduled as debts owing to her. Those debts that involved third-party creditors were cross-scheduled under their names.

Because of Mr. Kinsman's discharge in bankruptcy, Mrs. Kinsman became embroiled with creditors from whom he had agreed to protect her. She was forced to pay, compromise and litigate with third parties the agreed and decreed debts of Mr. Kinsman.

After a hearing on Mrs. Kinsman's petition for modification, the lower court first found that this shift and imposition of debts on her and relief to him was a substantial change in their respective circumstances occurring since the parties' divorce. Then the court concluded:

> The Decree of Divorce provided that no alimony would be awarded by the court to either party. However, the Supreme Court of the State of Utah ruled in *Georgedes v. Georgedes,* 627 P.2d 44 (Utah 1981) that in an appropriate case where there had been a significant change of circumstances, alimony could be awarded to a party although the alimony awarded in the Decree had terminated or no alimony was awarded.

Thereupon, the divorce decree was modified to provide Mrs. Kinsman alimony of $300.00 per month for sixty months.

On appeal, Mr. Kinsman poses the following question: Where a decree of divorce

does not award alimony, is the district court empowered by Utah Code Ann. § 30–3–5(3) (Supp.1987)[1] to award alimony in a subsequent modification proceeding?

## I.

Section 30–3–5(3) had its inception in analogous statutes adopted in 1876 and 1888. 1876 Utah Comp. Laws § 1155; 1888 Utah Comp. Laws § 2606. Its direct predecessor, enacted in 1907 and amended in 1909, provided in part:

> Subsequent changes, or new orders, may be made by the court in respect to the disposal of the children or the distribution of property, as shall be reasonable and proper.

1907 Utah Comp. Laws § 1212, as amended by 1909 Utah Laws, ch. 109, § 4. This language remained basically unchanged through 1968. *See* 1933 Utah Rev.Stat. § 40–3–5; Utah Code Ann. § 40–3–5 (1943); Utah Code Ann. § 30–3–5 (1953). The 1969 Legislature inserted the following provision in place of the foregoing:

> The court shall have *continuing jurisdiction* to make such subsequent changes or *new orders with respect to the support and maintenance of the parties,* the custody of the children and their support and maintenance, or the distribution of the property as shall be reasonable and necessary.

Utah Code Ann. § 30–3–5, as amended by 1969 Utah Laws, ch. 72, § 3 (emphasis added). Subsequent amendments have added language about medical and dental care for the children and have redesignated the quoted provision as part of subsection (3) instead of subsection (1).

Prior to 1969, the statute had enough deficiencies that the legislature deemed it necessary to rewrite the provision. One flaw was the "disposal of the children" phrase, which treated children as mere chattels. The 1969 legislature also, for the first time, declared that the district courts have continuing jurisdiction in divorce cases even after entry of a final decree. These important changes, reaffirmed in 1985, manifest the legislature's response to societal change. This was affirmative action that brought the statute into the twentieth century. Decisions under the pre–1969 statute must accordingly be reviewed with caution and must not be relied on as controlling authority.[2]

Under the present statute, the parties and their support and maintenance remain before the district court for the issuance of new orders when reasonable and necessary. In *Naylor v. Naylor,* 700 P.2d 707 (Utah 1985), the former wife petitioned for modification. The trial court extended payment of alimony for four years beyond the time limit set in the decree and increased the amounts of alimony and child support. The former husband argued on appeal that the trial court "exceeded its power" in modifying the term of alimony first awarded, even if there had been a substantial change in relevant circumstances. The Utah Supreme Court responded:

> This argument is contrary to the legislative mandate to the district courts and to the principles of equity followed by this Court. Section 30–3–5(1), U.C.A., 1953 (Supp.1983), states: "The court shall have continuing jurisdiction to make such subsequent changes or new orders with respect to the support and maintenance of the parties, the custody of the children and their support and maintenance, or the distribution of the property as shall be reasonable and necessary." The language of the statute makes it clear that

---

1. Because the changes and rearrangements in the statute since the Kinsmans' modification hearing do not affect the issue in this case, I refer to the statute in its present form.

2. For example, see the nebulous decision in *Cody v. Cody,* 47 Utah 456, 154 P. 952 (Utah 1916), which leaves one to guess what language can properly be attributed to the majority. Dictum from Justice Straup's dissent in *Cody* is then confusingly cited as precedent for the fol-

lowing holding, interpreting 1933 Utah Rev.Stat. § 40–3–5:

> So, too, where the original decree fails to award any alimony, the court, in the absence of fraud, deceit, mistake, or misrepresentation in procuring the decree, is without authority to modify the decree so as to award alimony.

*Hamilton v. Hamilton,* 89 Utah 554, 58 P.2d 11, 13 (1936). *See* Annotation, *Divorce—Later Alimony Award,* 43 A.L.R.2d 1387, 1403–04 (1955).

appellant's position that the trial court lacked power or jurisdiction to modify an alimony award is without merit.

*Id.* at 709. *See also Jones v. Jones,* 700 P.2d 1072, 1076 (Utah 1985).

Decisions under pre–1969 statutes found the concept of res judicata to be an obstruction to a new order granting alimony where none was awarded in the initial decree of the court. *E.g., Cody v. Cody* and *Hamilton v. Hamilton, supra* note 2. Since the 1969 statutory changes, however, numerous decisions have recognized that the grant of jurisdiction and power in the current section 30–3–5 is broader than in its ancestor statutes.

The Utah Supreme Court rejected the res judicata argument in *McLane v. McLane,* 570 P.2d 692 (Utah 1977), and reversed a district court order dismissing a father's petition to modify an Arizona divorce decree by changing the custody award. The Court quoted the "continuing jurisdiction" language of section 30–3–5 and clarified the res judicata effect of a divorce decree as follows: "Even though the decree is res judicata as to circumstances existing at the time of the decree, if there are changed circumstances so requiring, there can be a further adjudication thereon." *Id.* at 694. The next year, in *Kessimakis v. Kessimakis,* 580 P.2d 1090, 1091 (Utah 1978), the Court reaffirmed that, pursuant to section 30–3–5, a showing of substantial post-decree change in circumstances makes the doctrine of res judicata inapplicable.

In a 1980 child visitation and support decision, the Court viewed the broad nature of our statute thus:

Under Utah law, a divorce court sits as a court in equity so far as child custody, support payments, and the like are concerned. It likewise retains continuing jurisdiction over the parties, and *power to make equitable redistribution or other modification of the original decree as equity might dictate.* In both the formulation of the original decree and any modifications thereof, *the trial court is vested with broad discretionary powers,* which may be disturbed by an

appellate court only in the presence of clear abuse thereof.

*Despain v. Despain,* 610 P.2d 1303, 1305–06 (Utah 1980) (emphasis added).

In a more recent case, *Jeppson v. Jeppson,* 684 P.2d 69 (Utah 1984), the district court granted a modification request and terminated a previously decreed award of alimony to the ex-wife. Mrs. Jeppson's substantially improved financial circumstances since entry of the decree thirteen years earlier formed the basis for the action. On appeal, the modification was affirmed, with the Court finding no abuse of discretion. *Id.* at 70. Under present section 30–3–5, it could not seriously be argued that the termination of alimony to Mrs. Jeppson somehow deprived the district court of power to grant alimony anew if her circumstances materially deteriorated.

Since the court has power to "giveth and taketh away" alimony as the parties depart and proceed along the pathway of life, there is no compelling reason why that power cannot be invoked to provide alimony for the first time when a party encounters dire straits en route. The Utah Supreme Court recognized this broad construction of the post–1969 statute in *Georgedes v. Georgedes,* 627 P.2d at 46, in which it affirmed a divorce decree that denied any alimony:

If there is any material change in the circumstances of either party ... the trial court would apparently have "continuing jurisdiction to make such subsequent changes or new orders with respect to *the support and maintenance of the parties,* ... as shall be reasonable and necessary." U.C.A., 1953, 30–3–5.

The *Georgedes* court then noted, again in dicta:

This Court has previously indicated that a party in need of support cannot obtain it from a divorced spouse if the original decree did not award any alimony. *MacDonald v. MacDonald,* 120 Utah 573, 236 P.2d 1066 (1951); *Hamilton v. Hamilton,* 89 Utah 554, 58 P.2d 11 (1936). However, the prior statutes under which those cases were decided did

not include the words emphasized above. Utah Code Annotated, 40–3–5 (1943); Revised Statutes of Utah, 40–3–5 (1933). *Id.* at 46 n. 1. The strength of that signal is recognized. Our district courts are empowered by section 30–3–5(3) (Supp.1987) to award alimony in a new order, even if no award was made in the original decree.[3] This authority is limited only by the prerequisite change of circumstances, and it is tempered by the sound exercise of the district court's discretion. The majority demonstrates less confidence in our district judges than expressed by the legislature. If district judges have the ability to handle these issues properly at trial, they certainly are qualified to deal with the same issues at a post-divorce modification hearing.

The parties cannot irrevocably barter away or waive the statutory provision for future review of the "support and maintenance of the parties"; nor can the district court enter an eternal decree that either party will not be entitled to support and maintenance at any time in the future.

## II.

I turn next to the issue of whether the district judge abused his discretion by modifying the Kinsmans' divorce decree because of a substantial change in circumstances. At the time of the initial decree, Mr. Kinsman was ordered to pay: (1) $27,500.00 to D.S. Judd to provide Mrs. Kinsman with a place to live. He paid only $20,500.00. She had to negotiate and pay the $7,000.00 balance. (2) Monthly payments of $263.00 on First Federal Savings and Loan's mortgage on her place of residence. He paid only two payments. She has been required to assume the balance. (3) $5,000.00 to United Bank to free her $10,000.00 savings certificate, which had been pledged as security for a joint loan. He paid nothing. As a result, the certificate was taken from her. (4) $3,000.00 at $250.00 per month. He paid nothing. (5) Lump sum payment of $2,140.00. He paid only $1,000.00.

The foregoing figures demonstrate improved circumstances for Mr. Kinsman of at least $16,140.00. The figures show decreased resources for Mrs. Kinsman of at least $21,140.00. The gap was widened further by his shift of the First Federal mortgage obligation to her, in an amount not ascertainable from the record before us. This drastic disparity in the parties' financial circumstances occurred within eight months of their divorce. The evidence was properly limited to changes during the period between entry of the decree and the time of the modification hearing. *See Mineer v. Mineer,* 706 P.2d 1060, 1062 (Utah 1985). Whether accomplished by bankruptcy, obstinacy, abscondence, or any other scheme, artifice or device, the result remains the same—the relevant circumstances of the parties were wrought with substantial change. Based upon that finding, the court was bound to review for potential modification or new orders. *See Stettler v. Stettler,* 713 P.2d 699 (Utah 1985); *Lea v. Bowers,* 658 P.2d 1213 (Utah 1983); *Kessimakis v. Kessimakis,* 580 P.2d 1090 (Utah 1978).

Having completed a comparison of current circumstances with those existing when the initial decree was entered, the district court went on to review the factors relevant to an alimony award, including Mrs. Kinsman's needs and financial condition, her ability to earn a sufficient income, and Mr. Kinsman's ability to provide support. See *Talley v. Talley,* 739 P.2d 83 (Utah App.1987) and cases cited therein. The court weighed each of these factors and considered all circumstances of the parties, as well as their respective assets

---

**3.** This result eliminates the long-standing ritual among practitioners of reserving $1.00 per year alimony, which was neither expected nor paid, in order to protect the so-called "right to alimony." That practice appears to have its origin in *MacDonald v. MacDonald,* 120 Utah at 583, 236 P.2d at 1070–71:

> In making the decree awarding defendant only the nominal sum of $10 per year alimo-

ny, which was based on the then circumstances, Judge Van Cott expressly recited that it was for the purpose of preserving her right to alimony and directed that if danger of dependence appeared, the burden of her support would fall upon plaintiff [ex-husband] and not upon others.

and sources of income, *Jeppson v. Jeppson,* 684 P.2d 69 (Utah 1984), and found an appropriate award to be $18,000.00 alimony, paid at $300.00 per month.[4]

A review of the record reveals no injustice or manifest inequity. This court will not disturb the trial court's award of alimony unless clear and prejudicial abuse of discretion has been shown. *Eames v. Eames,* 735 P.2d 395, 397 (Utah App.1987); *Petersen v. Petersen,* 737 P.2d 237, 239 (Utah App.1987). No abuse of discretion having been shown by appellant, the order of the district court should be affirmed.

---

**4.** As stated in the main opinion, respondent did not file a proper cross-appeal to invite review of the fixed nature of the alimony award.