2004 UT App 179

**James C. MEDLEY, Petitioner and Appellant,**

v.

**Freda A. MEDLEY, Respondent and Appellee.**

No. 20020920–CA.

Court of Appeals of Utah.

June 4, 2004.

Clark A. McClellan and Clark B. Allred, McKeachnie Allred McClellan & Trotter, Vernal, for Appellant.

Cleve J. Hatch, Duchesne, for Appellee.

Before Judges JACKSON, ORME, and THORNE, Jr.

OPINION

ORME, Judge:

¶ 1 With our leave, James C. Medley appeals the interlocutory order denying his motion to dismiss Freda A. Medley's petition to modify alimony. We agree with the trial court that Freda did not waive her right to future alimony and remand for consideration of whether she is entitled to such alimony.

FACTUAL BACKGROUND

¶ 2 After thirty years of marriage, James and Freda Medley were divorced on March 20, 2000. During the course of the marriage, James earned the primary income. At the time of the divorce, James was employed at the Deseret Generation plant outside Vernal, Utah, and was earning over $50,000 per year. During the marriage and at the time of divorce, Freda was primarily a homemaker, although she was employed outside the home for short intervals.

¶ 3 The decree of divorce, drafted by James's attorneys, incorporated the terms of the parties' stipulation and property settlement agreement. Freda was not represented by counsel in the divorce proceedings. Among other things, the decree awarded to each party a vehicle, the personal property in his or her possession, half of the retirement and savings accounts, half of the 1999 income tax refund, and half of the proceeds remaining from the sale of their home after the mortgage and costs of sale had been paid.

¶ 4 At issue in this appeal is the effect of paragraph 7 of the stipulated decree, which provided in pertinent part:

> In lieu of and as satisfaction of any claim either party has to alimony, after the house is sold, [James] is ordered to pay [Freda] $400.00 per month to be used for rent and starting November 1, 1999, [James] is ordered to pay [Freda] $300.00 per month for health insurance. These $400.00 per month and $300.00 per month payments shall cease on December 31, 2002.

¶ 5 On July 19, 2002—five months before James's payments were to cease—Freda filed a petition to modify the divorce decree,

alleging a material change of circumstances, principally the fact that she had been diagnosed with congestive heart failure. Relying on what he contends was Freda's waiver of the right to alimony, James moved to dismiss. The trial court declined to dismiss, determining that, depending on Freda's proof, it could enter a new order of alimony despite the provisions in the stipulation and decree. James petitioned this court for leave to take an immediate appeal from this interlocutory order, and we granted the petition.

## ISSUE AND STANDARD OF REVIEW

¶ 6 James argues that the trial court erred in denying his motion to dismiss. He claims that the settlement agreement and divorce decree constitute a binding waiver of alimony, which may not be modified, and that the provisions of Utah Code Ann. § 30-3-5(8)(g) (Supp.2003)[1] therefore do not apply. "[A]lthough we generally review the determination to modify a divorce decree for an abuse of discretion, insofar as that determination is based on a conclusion of law, we review it for correctness." *Krambule v. Krambule*, 1999 UT App 357,¶ 10, 994 P.2d 210, *cert. denied*, 4 P.3d 1289 (Utah 2000).

## ANALYSIS

¶ 7 " 'Waiver is "the intentional relinquishment of a known right." ' " *Hinckley v. Hinckley*, 815 P.2d 1352, 1354 (Utah Ct.App. 1991) (quoting *Mont Trucking, Inc. v. Entrada Indus., Inc.*, 802 P.2d 779, 781 (Utah Ct.App.1990)) (other citation omitted). " 'In

order for waiver to occur, "there must be an existing right, benefit or advantage, a knowledge of its existence, and an intention to relinquish it." ' " *Id.* (citations omitted). The conduct of a party waiving a right " ' "must evince unequivocally an intent to waive, or must be inconsistent with any other intent." ' " *Id.* (citations omitted). Additionally, "contracts between spouses or potential spouses are not necessarily judged on the same terms as contracts executed by persons operating at 'arm's length.' " *Reese v. Reese*, 1999 UT 75,¶ 24, 984 P.2d 987.

¶ 8 In order to conclude that Freda waived alimony, including her prospective rights under the divorce statute,[2] James must show that she knowingly and intentionally gave up the right to obtain support from him in the future. We are unable to say that Freda gave up this right because the circumstances do not show a clear intention to relinquish her *prospective* statutory alimony rights.

¶ 9 In *Kinsman v. Kinsman*, 748 P.2d 210 (Utah Ct.App.1988), the "[p]laintiff agreed to waive any right to receive alimony 'now and forever.' "[3] *Id.* at 212. The language of that agreement shows a clear intent to waive alimony in the present *and future*. In contrast, the stipulation in the present case, which was incorporated into the decree, states that its provisions are "[i]n lieu of and as satisfaction of" alimony. The language of the stipulation is ambiguous because it is not clear whether the payments were to be made in *satisfaction* of the alimony obligation, or in *exchange* for Freda surrendering her right to alimony.[4]

1. As a convenience to the reader, and because the provisions in effect at the relevant times do not differ materially from the provisions currently in effect, we cite to the most recent statutory codifications throughout this opinion.

2. "The court has *continuing jurisdiction* to make substantive changes and *new* orders regarding alimony based on a substantial material change in circumstances not foreseeable at the time of the divorce." Utah Code Ann. § 30-3-5(8)(g)(i) (Supp.2003) (emphasis added).

3. The plaintiff's promise in *Kinsman* was conditioned on her husband's payment of certain bills. *See* 748 P.2d at 211. When he declared bankruptcy, this condition was not satisfied and her waiver of alimony was thereby relieved. *See id.* The applicable part of that stipulation read as

follows: "The parties hereby stipulate and agree that each party is a fit and employable person capable of supporting himself [or] herself respectively and that neither party is entitled to alimony and both parties hereby waive the same now and forever." *Id.* at 211 n. 1.

4. Given that "[t]he purpose of alimony is to 'provide support for the wife,' " *Georgedes v. Georgedes*, 627 P.2d 44, 46 (Utah 1981) (citation omitted), the terms of the stipulation in this case may be revealing. The payments James was required to make under the stipulation were for rent and health insurance—classic elements of support. At the same time, it is not clear from the record whether James took a deduction on his taxes for the payments, as Freda alleged in her petition, or whether Freda reported the same as income, both of which would be anticipated, given appli-

If the payments were *in lieu of* alimony, then they were taken as an alternative to alimony, and the intent to waive at least the present right to alimony could be inferred. However, if the payments were merely *in satisfaction of* an acknowledged alimony obligation, it would stand to reason that the obligation could be modified pursuant to the statute.

¶ 10 Moreover, even if the stipulation can be fairly construed as a waiver of the present right to receive alimony, it cannot be fairly construed to waive the right to *future* alimony in the event of a material change in circumstances, pursuant to the alimony provisions of the divorce statute. *See* Utah Code Ann. § 30–3–5(8)(g)(i)–(ii) (Supp.2003). We reach this conclusion because the stipulation made no reference to the statutory right to new alimony allegedly waived, either by explicit reference to the statute or, as attempted in *Kinsman*, by a clear reference to the concept of future alimony.[5] We simply "will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.' More succinctly, the waiver must be clear and unmistakable." *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708, 103 S.Ct. 1467, 1477, 75 L.Ed.2d 387 (1983). There is no such "clear and unmis-

takable" waiver in the stipulation in the case before us.

## CONCLUSION

¶ 11 We agree with the conclusion of the trial court and affirm its refusal to dismiss on waiver grounds. We remand the case for consideration of Freda's petition on its merits.[6]

¶ 12 WE CONCUR: NORMAN H. JACKSON and WILLIAM A. THORNE JR., Judges.

---

cable provisions of the Internal Revenue Code, if the payments were intended to be alimony. *See* 26 U.S.C.A. §§ 61, 62, 215 (West 2002) (Gross income is defined as income from any source, including alimony; a deduction from gross income is allowed in an amount equal to alimony paid.).

5. We hasten to add that the fact that Freda was not represented by counsel when she entered into the stipulation is of only limited relevance in this appeal. A party is free to represent herself, *but may not then use her lack of representation* to her tactical advantage. The fact that she did not have counsel means, however, that we need not pause to consider whether it should be presumed that her attorney advised her of her rights to future alimony under the statute and that, in signing the stipulation, she was therefore necessarily waiving that right.

6. Because the key issue on remand will be the legal effect of Freda's downturn in health in the context of Utah Code Ann. § 30–3–5(8) (Supp. 2003), a matter which occupied much of our attention at oral argument, we had hoped to offer some meaningful guidance for the assistance of

the parties and the trial court on remand. *See, e.g., Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 38, 70 P.3d 35 (explaining that although the decision to remand makes it unnecessary to reach other issues raised on appeal, "in the interest of judicial economy, 'a brief discussion of these issues is appropriate as guidance for the trial court on remand' ") (citation omitted); *State v. Bell*, 770 P.2d 100, 108 (Utah 1988) (addressing issues although they were unnecessary in making the determination to remand "to provide the trial court with some guidance"). In the course of our deliberations, however, it has become clear that we have no consensus on whether we should offer guidance to assist the trial court in resolving the issues likely to arise on remand and, if so, what any such guidance should be. We believe the sharing of multiple, inconsistent views would actually confuse the court and parties, rather than enlighten them, and complicate, rather than aid, the course of the proceedings on remand. Accordingly, in the exercise of judicial discipline—if not judicial economy—we resist the temptation to globally resolve the legal issues raised by Freda's petition and simply decide the issue squarely presented in this interlocutory appeal.