2007 UT App 173

**Kallie J. SILL, Petitioner and Appellee,**

v.

**Joel Gordon SILL, Respondent and Appellant.**

**No. 20060296–CA.**

Court of Appeals of Utah.

May 24, 2007.

Christina Inge Miller, David B. Thompson, and Natalie C. Segall, Park City, for Appellant.

David S. Dolowitz, Dena C. Sarandos, and Thomas J. Burns, Salt Lake City, for Appellee.

Before BENCH, P.J., BILLINGS and ORME, JJ.

## OPINION

BILLINGS, Judge:

¶ 1 Respondent Joel Gordon Sill (Husband) appeals the trial court's grant of Petitioner Kallie J. Sill's (Wife) motion to dismiss Husband's petition to modify the parties' divorce decree. On appeal, Husband contends the trial court erred in concluding that the parties' stipulation, incorporated into the divorce decree, to waive all modification rights divested the court of its statutorily granted jurisdiction to modify the alimony award. *See* Utah Code Ann. § 30–3–5(8)(g)(i) (Supp. 2006). We reverse and remand.

## BACKGROUND

¶ 2 In March 2000, Husband and Wife agreed to end their eighteen-year marriage, and Wife filed a divorce petition. Both parties retained competent counsel, and Husband and Wife entered into settlement negotiations.

¶ 3 Eventually, the parties reached a stipulation and property settlement agreement (the Agreement). The Agreement provides that the stipulation "resolves all issues between [the parties]." Under the terms of the Agreement, the parties agreed that in "divid[ing] the marital assets and income, . . . [Husband] w[ould] pay [Wife] the sum of $1,780,000[ ] within ninety (90) days of execution of th[e] [A]greement." Additionally, the parties agreed as to the division of real and personal properties and the division of Husband's retirement account. The Agreement also provides that Husband will provide Wife with $6000 per month in alimony for a period of ten years and that Husband will pay an additional $8000 per month in alimony (totaling $14,000 per month) for however many months it takes Husband to pay the $1.78 million in full. Finally, the Agreement includes a stipulation specifying that "[t]he provisions of th[e] [A]greement shall be non-modifiable as shall the Decree of Divorce which implements it with the sole exception that if all of the assets have not been disclosed and divided in th[e] [A]greement, those may be brought back before the [c]ourt for appropriate disposition."

¶ 4 The trial court approved the Agreement and incorporated its provisions into the parties' March 2001 divorce decree (the Decree), determining that "[the Agreement is] a fair and equitable method of resolving all issues between [the parties] and provides for the support of each of the parties and the division of their assets and payment of debts."

¶ 5 Following the issuance of the Decree, the parties adhered to the Agreement. But on September 13, 2005, Husband filed a petition to modify the Decree, in which he asked the court to reduce the amount of alimony he agreed to pay because he had suffered a substantial decrease in income. Wife moved to dismiss Husband's petition to modify, claiming that in accordance with the Agreement incorporated in the Decree, both parties had waived the right to modify any terms of the Agreement, including the alimony award.

¶ 6 The trial court agreed with Wife that the parties' waiver of all modification rights barred Husband's request to modify the alimony award and therefore dismissed Husband's petition to modify the Decree.

¶ 7 Husband appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 8 On appeal, Husband asserts that the trial court erroneously dismissed his petition to modify the Decree. Husband contends that the trial court wrongly determined that the parties' waiver of modification rights divests the court of its jurisdiction to make alimony modifications under Utah Code section 30–3–5(8)(g)(i). *See* Utah Code Ann. § 30–3–5(8)(g)(i). " '[A]lthough [this court] generally review[s] the determination to modify a divorce decree for an abuse of discretion, insofar as that determination is based on a conclusion of law, we review it for correctness.' " *Medley v. Medley*, 2004 UT App 179, ¶ 6, 93 P.3d 847 (first alteration in original) (quoting *Krambule v. Krambule*, 1999 UT App 357, ¶ 10, 994 P.2d 210).

## ANALYSIS

¶ 9 Under section 30–3–5(8)(g)(i), "[t]he court has *continuing* jurisdiction to make substantive changes and new orders regarding alimony based on a substantial material change in circumstances not foreseeable at the time of the divorce." Utah Code Ann. § 30–3–5(8)(g)(i) (emphasis added).[1] The issue we must decide is whether the non-modification provision that the parties stipulated to in the Agreement, and that the trial court subsequently incorporated into the Decree, usurped the trial court of this continuing jurisdiction to make alimony modifications. We conclude that pursuant to Utah law, the non-modification provision did not divest the court of its continuing jurisdiction under section 30–3–5(8)(g)(i).

¶ 10 First, we begin by examining the language of the statute itself. *See State v. Barrett*, 2005 UT 88, ¶ 29, 127 P.3d 682 ("When interpreting statutes, this court first looks to the plain language."). In so doing, " '[w]e presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning.' " *Id.* (quoting *C.T. ex rel. Taylor*

v. *Johnson*, 1999 UT 35, ¶ 9, 977 P.2d 479). Thus, although section 30–3–5 provides no explicit guidance as to the issue before us now, we note the significance of the legislature's inclusion of the adjective "continuing" to refer to the court's jurisdiction and that the generally accepted definition of continuing is "enduring" or "constant." *Merriam Webster Collegiate Dictionary* 251 (10th ed.2004).

¶ 11 Second, we acknowledge that this court has previously explained that "[w]here the parties' stipulation is accepted by the trial court and incorporated into its [divorce] order, the subject matter of the stipulation is within the continuing jurisdiction of the court." *Gates v. Gates*, 787 P.2d 1344, 1346 (Utah Ct.App.1990).

¶ 12 Third, we highlight that the effect of parties' alimony stipulations, subsequently incorporated into a decree, on a court's jurisdiction to modify alimony is "no longer considered an open question in this [s]tate." *Jones v. Jones*, 104 Utah 275, 139 P.2d 222, 223–24 (1943).

"In a divorce action the trial court should make such provision for alimony as the present circumstances of the parties warrant, and any stipulation of the parties in respect thereto serves only as a recommendation to the court. If the court adopts the suggestions of the parties it does not thereby lose the right to make such modification or change thereafter as may be requested by either party based on some change or circumstances warranting such modification."

*Id.* at 224 (quoting *Barraclough v. Barraclough*, 100 Utah 196, 111 P.2d 792, 793 (1941) (per curiam)); *see also Huck v. Huck*, 734 P.2d 417, 419 (Utah 1986). That is,

"the law was intended to give the courts power to disregard the stipulations or agreement of the parties in the first instance and enter judgment for such *alimony* or child support as appears reasonable,

---

1. Generally, "[a] party seeking modification of a divorce decree must demonstrate that a substantial change in circumstances has occurred since entry of the decree [that was] not contemplated in the decree itself." *Bayles v. Bayles*, 1999 UT App 128, ¶ 12, 981 P.2d 403 (quotations and

citations omitted); *see also* Utah Code Ann. § 30–3–5(8)(g)(i)–(ii) (Supp.2006). Here, the trial court dismissed Husband's petition to modify for lack of jurisdiction and therefore did not reach the issue of changed circumstances.

and to thereafter modify such judgments when change of circumstances justifies it, *regardless of attempts of the parties to control the matter by contract."*

*Diener v. Diener,* 2004 UT App 314, ¶ 5, 98 P.3d 1178 (emphasis added) (quoting *Naylor v. Naylor,* 700 P.2d 707, 709–10 (Utah 1985)) (affirming trial court's denial of father's petition to modify child support but emphasizing that the parties' prior stipulation as to father's child support obligation was, "standing alone," an insufficient basis for denying the petition to modify because "when presented with a petition to modify a child support order, the trial court may not simply rely upon a prior stipulation entered into by the parties and accepted by the court").

¶ 13 Finally, we rely on the Utah Supreme Court's decision in *Callister v. Callister,* 1 Utah 2d 34, 261 P.2d 944 (1953), in which the court considered whether the trial court had the power and jurisdiction under Utah Code section 30–3–5 to modify the parties' divorce decree with regard to alimony payments even if the parties had entered into an agreement, incorporated into the divorce decree, intending for the alimony amount provision to be nonmodifiable. In deciding "that the trial court had power and jurisdiction to modify the decree ... with respect to the [alimony] payments," *id.* at 949, the court held that

> by approval of the agreement in the decree the court did not divest itself of jurisdiction under the statute to make such subsequent changes and orders with respect to alimony payments as might be reasonable and proper, based upon a change of circumstances. [And the court] hold[s] this to be true even though the provisions of the agreement should be interpreted to mean that the parties intended to stipulate for a fixed and unalterable amount of monthly alimony.

*Id.* at 948.[2]

¶ 14 We recognize that at the time of the *Callister* decision section 30–3–5 read:

> "When a decree of divorce is made the court may make such orders in relation to the children, property and parties, and the maintenance of the parties and children, as may be equitable.... Such subsequent changes or new orders may be made by the court with respect to the disposal of children or the distribution of property as shall be reasonable and proper."

*Id.* at 946 (omission in original) (quoting Utah Code Ann. § 30–3–5 (1953) (amended 1969)). But we do not find that the statute's present day language undermines the holding in *Callister;* rather, we believe the fact that the court decided *Callister* prior to the legislature's inclusion of the continuing jurisdiction language strongly supports our decision that the parties' non-modification provision did not divest the court of its jurisdiction to make alimony modifications. Further, courts interpret the *Callister* decision as "hold[ing] in effect that the court has continuing jurisdiction to raise or lower alimony irrespective of any agreement of the parties." *Felt v. Felt,* 27 Utah 2d 103, 493 P.2d 620, 622 (1972) (noting that this is "a principle which [the court has] consistently ... espoused").

¶ 15 We acknowledge, however, Wife's reliance on *Kinsman v. Kinsman,* 748 P.2d 210 (Utah Ct.App.1988), for her assertion that "Utah courts have long recognized a party's ability to waive the right to modify the terms of an alimony award contained in a stipulated divorce decree." In *Kinsman,* the wife sought to modify a divorce decree that incorporated the parties' property settlement agreement, in which they agreed as part of the property distribution to forever waive their rights to alimony payments. *See id.* at 211. The trial court granted the wife's petition for modification and awarded the wife alimony based upon a substantial change in circumstances. *See id.* The husband appealed, arguing that the parties' waiver provision barred the wife from obtaining an alimony award. *See id.* On appeal, this court affirmed the trial court's modification, although it declined to do so based on a

---

2. Unlike here, the agreement in *Callister v. Callister,* 1 Utah 2d 34, 261 P.2d 944 (1953), did not expressly involve a non-modification provision. But the court read the parties' agreement in that case to mean that the "parties intended to stipulate for a fixed and unalterable amount of monthly alimony." *Id.* at 948.

change of circumstances, explaining that "to base the award of alimony on changed circumstances ignores the finality of the terms of the stipulation which should only be overturned 'with great reluctance and for compelling reasons.'" *Id.* at 212 (citation omitted). Alternatively, the court "based [its affirmance] on a contract theory" and decided that because the husband "failed to perform [a material] condition precedent" upon which the wife's promise to waive alimony was premised, the alimony waiver stipulation was "no longer enforceable." *Id.* at 212–13.

¶ 16 Here, Wife reads the court's language in *Kinsman* "declin[ing] to hold that a change of circumstances can overcome a knowing and specific waiver in a stipulation," *id.* at 212, to mean that the court is divested of its continuing jurisdiction to modify alimony where there has been a specific and knowing waiver by the parties to alter the alimony amount. We think Wife reads *Kinsman* too broadly. The language in *Kinsman* does not denote that a court is divested of its statutorily granted jurisdiction where parties have waived their right to modify. Rather, *Kinsman* merely reflects the rule that courts are more reluctant to overturn specific and knowing waivers of property distribution rights and thus require a movant to show more than changed circumstances—i.e., the movant must demonstrate compelling reasons—for the court to modify and override the parties' waiver. *See, e.g., Land v. Land,* 605 P.2d 1248, 1251 (Utah 1980) ("[T]he law limits the continuing jurisdiction of the court where a property settlement agreement has been incorporated into the decree, and the outright abrogation of the provisions of such agreement is only to be resorted to with great reluctance and for compelling reasons.").

¶ 17 In sum, considering section 30–3–5(8)(g)'s continuing jurisdiction language and Utah case law holding that parties cannot by contract divest a court of its statutorily granted subject matter jurisdiction to make alimony modifications, even if the parties intend the alimony provisions to be nonmodifiable, we conclude that the trial court erred in granting Wife's motion to dismiss Husband's petition to modify. We therefore reverse

and remand for the trial court to consider Husband's petition to modify on the merits.

¶ 18 Importantly, however, we agree with the court in *Kinsman* that a trial court should be reluctant to overturn parties' specific and knowing waivers in agreements governing both property rights and alimony. *See Kinsman v. Kinsman,* 748 P.2d 210, 212 (Utah Ct.App.1988). Therefore a movant, such as Husband, must show compelling reasons, *see id.,* to modify a divorce decree that includes a provision that the decree is nonmodifiable.

¶ 19 We further note that the parties included the alimony stipulation as part of an agreement dividing the parties' property. If on remand the trial court decides to reexamine the alimony issue, determining that compelling reasons exist to support a finding that a substantial change of circumstances has occurred, the court, if requested, should reexamine how any change in alimony would affect the Agreement's property division provisions incorporated into the Decree. The non-modification provision was certainly a part of the bargaining process when the parties agreed to both the alimony and the property division provisions in the Agreement that were incorporated into the Decree. Thus, if the trial court determines on remand that it should modify the alimony awarded in the Decree, then it is reasonable for the court to examine the effect of that modification on the original property division. *See Noble v. Noble,* 761 P.2d 1369, 1373 (Utah 1988) ("[T]he issues of alimony and property distribution are not entirely separable. 'Neither the trial court nor this [c]ourt considers the property division in a vacuum. The amount of alimony awarded and the relative earning capabilities of the parties are also relevant, because the relative abilities of the spouses to support themselves after the divorce are pertinent to an equitable determination of the division of the fixed assets of the marriage.'" (quoting *Newmeyer v. Newmeyer,* 745 P.2d 1276, 1279 n. 1 (Utah 1987))); *see also Willey v. Willey,* 866 P.2d 547, 551–52 (Utah Ct.App.1993) ("[T]he trial court should consider [parties'] debt when it reexamines the alimony award on remand, because this debt has a direct bearing on

[relevant factors in alimony determination].”); *D'Aston v. D'Aston,* 808 P.2d 111, 115 (Utah Ct.App.1990) (“Because we reverse and remand the property division, we also reverse and remand on the issue of alimony.”); *Davis v. Davis,* 2001 UT App 327, 2001 WL 1340747 (mem.) (holding that “[a]n equitable division of marital property is not purely an independent determination, but must be made in light of the alimony, if any, that is awarded” and deciding that “[b]ecause we vacate and remand the alimony award, we also vacate and remand the marital property division for further consideration”). *See generally Burt v. Burt,* 799 P.2d 1166, 1172 n. 10 (Utah Ct.App.1990) (“[A]lteration of pivotal portions of the ... decree may necessitate reassessment and adjustment of other portions of the decree and ... the trial court has the authority to reconsider its entire decree ... and to make such adjustments as may be necessary to achieve an equitable overall result.”).

## CONCLUSION

¶ 20 Because we conclude that the parties' non-modification provision incorporated into the Decree did not divest the trial court of its statutorily granted continuing jurisdiction to make alimony modifications, we determine that the trial court erred in granting Wife's motion to dismiss Husband's petition to modify. Accordingly, we reverse and remand for proceedings consistent with this opinion.

¶ 21 I CONCUR: RUSSELL W. BENCH, Presiding Judge.

ORME, Judge (concurring specially):

¶ 22 I agree we should remand for the trial court to exercise its subject matter jurisdiction, and I concur in most of what is said in the lead opinion.[1] I wish, however, to highlight a couple of points that I believe merit emphasis.

¶ 23 This case presents a conflict between two very important precepts in our jurisprudence: First, parties to litigation are free— indeed, encouraged—to stipulate to the resolution of their disputes and, when they do so, the courts of this state will enforce those agreements as written and will not paternalistically substitute their judgment for that of the parties. Second, courts are jealous of their subject matter jurisdiction and strongly disinclined to let private litigants deprive the courts of that jurisdiction via contract. Against the backdrop of this dichotomy, there is nothing, in my opinion, to stop grown adults, represented by competent counsel, from introducing greater predictability and stability into their post-marriage lives by stipulating away their statutory right to have alimony revisited in the future even if their circumstances materially change. *See, e.g., Medley v. Medley,* 2004 UT App 179, ¶ 10, 93 P.3d 847 (holding that right to future alimony based upon material change in circumstances pursuant to Utah Code section 30–3–5(8)(g) can be waived “by explicit reference to the statute or ... a clear reference to the concept of future alimony”); *Kinsman v. Kinsman,* 748 P.2d 210, 212–13 & n. 2 (Utah Ct.App.1988). That said, I agree that parties cannot stipulate away a court's subject matter jurisdiction.

¶ 24 I agree with my colleagues, then, that the trial court erred in dismissing Husband's modification petition for lack of jurisdiction. I also agree we should remand and direct the court to exercise its jurisdiction. From there, I may part company with the lead opinion. (I say “may” because it is unclear how much wiggle room the majority really believes a trial court should have in finding that “compelling reasons” exist to relieve a party of his or her bargain.) In my view, in exercising its subject matter jurisdiction in such a case, the trial court should routinely enforce the stipulated agreement to the same extent it would any other stipulated agreement, provided only that the intention to waive one's statutory modification rights is “ ‘clear and unmistakable.’ ” *Medley,* 2004 UT App 179 at ¶ 10, 93 P.3d 847 (quoting *Metropolitan Edison Co. v. NLRB,* 460 U.S.

---

1. I do think the lead opinion spends way too much time treating *Callister v. Callister,* 1 Utah 2d 34, 261 P.2d 944 (1953). While an historically important opinion, *Callister* is essentially irrelevant to the present dispute given that, as the lead opinion recognizes in its footnote 2, that case did not involve an actual stipulation with a non-modification clause. *See id.* at 945, 948.

693, 708, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983)).