2011 UT App 69

**LARSEN BEVERAGE and Globe Indemnity Company, Petitioners,**

v.

**LABOR COMMISSION, Employers' Reinsurance Fund, and Dana Hutchison, Respondents.**

No. 20091077–CA.

Court of Appeals of Utah.

March 10, 2011.

Mark D. Dean and Kristy L. Bertelsen, Salt Lake City, for Petitioners.

Edwin C. Barnes, Wendy Bowden Crowther, and Robert D. Andreasen, Salt Lake City, for Respondent Employers' Reinsurance Fund.

Alan L. Hennebold, Salt Lake City, for Respondent Labor Commission.

Timothy C. Allen, Salt Lake City, for Respondent Dana Hutchison.

Before Judges DAVIS, VOROS, and CHRISTIANSEN.

## OPINION

DAVIS, Presiding Judge:

¶ 1 Petitioners Larsen Beverage and Globe Indemnity Company (collectively, Larsen) seek review of the final order of the Utah Labor Commission that interpreted a stipulation reached by Larsen, Dana Hutchison, and the Employers Reinsurance Fund (ERF) as precluding Larsen's ability to seek reimbursement from ERF for paid medical expenses as provided for by statute. We reverse and remand.

## BACKGROUND

¶ 2 On August 23, 1993, while working for Larsen, Hutchison sustained an injury to her lower back when she lifted a beverage machine into a truck. This injury led to three lower-back surgeries over the following several years. These surgeries were in addition to one she had previously undergone due to a basketball injury some nine years before the industrial accident.

¶ 3 Larsen paid Hutchison workers' compensation benefits through February 2004. At this point Hutchison was still unable to work and she therefore filed an Application for Hearing requesting permanent total disability benefits. Larsen agreed in its Answer that Hutchison was permanently and totally disabled. The parties thereafter attempted mediation, which was unsuccessful.

¶ 4 The parties did, however, enter into a stipulation addressing the payment of certain benefits, which stipulation the administrative law judge (the ALJ) approved. The stipulation, entitled "Stipulation and Order of Tentative Permanent Total Disability," stated that the parties agreed that Hutchison should be granted several enumerated "tentative permanent total disability benefits." Among these benefits were the following:

4. That ... the parties conclude [Hutchison] is entitled to a tentative finding of permanent total disability.

. . . .

6. That [ERF] place [Hutchison] on the fund payroll and pay permanent total disability benefits at the rate of $227 per week commencing March 1, 2004 and continuing until further order of the Labor Commission. . . .

. . . .

8. That [Larsen] shall be responsible for all medical expenses resulting from the industrial accident of August 23, 1993 subject to the Fee Schedule of the Labor Commission.

The stipulation also provided that Hutchison's back problems prior to the industrial accident left her with a 10% whole person impairment.

¶ 5 After Hutchison was evaluated by the Utah State Office of Rehabilitation, the Labor Commission set a hearing to consider the results. During the hearing Larsen's counsel stated,

At this point it's our position that we don't contest the perm[anent] total disability status of Ms. Hutchison, and believe the benefits should be continued as they have been to-date.

On behalf of Globe Indemnity, we will be submitting for reimbursement of all benefits, medical benefits after the first 50 percent of medical benefits after the $20,000, and reimbursement of indemnity benefits after the first 156 weeks pursuant to the Utah Code.

*See generally* Utah Code Ann. § 34A–2–413(3)(c) (Supp.2010) (providing that ERF shall reimburse an employer for any overpayment of permanent total disability compensation); *id.* § 34A–2–703(2)–(4) (2005) (providing that when an employee has at least a 10% whole person permanent impair-

ment prior to an industrial accident, the employer is entitled to reimbursement from ERF for (1) any permanent total disability benefits paid after the first 156 weeks and (2) 50% of medical expenses paid after the first $20,000). The ALJ stated during the hearing that he would enter an order for the requested reimbursement, yet the resulting order contained no such provision. Instead, the ALJ's order stated that Larsen had agreed at the hearing that the benefits provided for in the stipulation should continue, and the order concluded that Larsen should therefore pay all of Hutchison's medical expenses related to the industrial accident.

¶ 6 Larsen thereafter filed a Motion for Relief from Order and/or Motion to Alter or Amend Judgment. When that motion was not ruled upon, Larsen filed a Motion for Review of the ALJ's Final Order of Permanent Total Disability. Larsen argued that the stipulation had been intended as only a tentative agreement and that Larsen was entitled to reimbursement for portions of the over 312 weeks of compensation and $825,000 of medical expenses it had already paid to Hutchison. After a response by ERF, the Labor Commission entered an order affirming the ALJ's decision. Larsen now seeks review of the Labor Commission's order.

## ISSUE AND STANDARD OF REVIEW

¶ 7 Larsen claims that the Labor Commission erred in essentially interpreting portions of the stipulation as Larsen's waiver of its right to reimbursement from ERF as provided for by statute. " '[A] stipulation will be construed like other contracts or written instruments inter partes....' " *Yeargin, Inc. v. Auditing Div. of the Utah State Tax Comm'n,* 2001 UT 11, ¶ 39, 20 P.3d 287 (quoting *Deseret Sav. Bank v. Walker,* 78 Utah 241, 2 P.2d 609, 614 (1931)). And "the rule has traditionally been that an agency's interpretation of 'contracts and certificates' presents a question of law, reviewed nondeferentially for correctness, at least so long as ambiguous or technical terms are not involved." *Magnesium Corp. of Am. v. Air Quality Bd.,* 941 P.2d 653, 657 (Utah Ct.App.

1997). The issue of "whether the [Labor Commission] employed the proper standard of waiver [also] presents a legal question which is reviewed for correctness." *Pledger v. Gillespie,* 1999 UT 54, ¶ 16, 982 P.2d 572.

## ANALYSIS

¶ 8 Larsen argues that pursuant to Utah Code section 34A–2–703, *see* Utah Code Ann. § 34A–2–703(2)–(4), it is entitled to reimbursement from ERF for certain amounts of benefits paid to Hutchison and that the Labor Commission should have included such reimbursement in its order. ERF responds by arguing that Larsen waived any claim that it had for reimbursement under the statute by stipulating to pay, without any reservation, Hutchison's reasonable medical expenses. "Waiver is the intentional relinquishment of a known right.... The conduct of a party waiving a right must evince unequivocally an intent to waive, or must be inconsistent with any other intent." *Medley v. Medley,* 2004 UT App 179, ¶ 7, 93 P.3d 847 (citations and internal quotation marks omitted); *see also McCord & Nave Mercantile Co. v. Glen,* 6 Utah 139, 21 P. 500, 501 (1889) ("While it is true that a party can waive the benefits of a statute, there should be substantial evidence of a waiver, and it should not be left to construction or doubt.").

¶ 9 The parties spend much of their briefs interpreting the stipulation's language to determine whether Larsen's agreement to pay Hutchison's medical expenses was tentative in nature. We simply do not see that the original intended duration of that obligation is important here because, as the ALJ found, Larsen agreed at the hearing that the benefits should continue as they existed under the stipulation, that is, Larsen's obligation to pay reasonable medical expenses resulting from the accident should continue beyond the finding of permanent total disability. Indeed, Larsen's counsel straightforwardly stated at the hearing, "At this point it's our position that we don't contest the perm[anent] total disability status of Ms. Hutchison, and believe the benefits should be continued as they have been to-date." [1] Furthermore, even

---

1. The medical payments were listed in the stipu-

lation as one of the "tentative permanent total

had Larsen not agreed to such an extension, statutory provisions would have required Larsen to pay these medical bills, *see* Utah Code Ann. § 34A–2–703(1)–(2) ("The employer or its insurance carrier is liable for the first $20,000 of medical benefits.... Reasonable medical benefits in excess of the first $20,000 shall be paid in the first instance by the employer or its insurance carrier."). Thus, notwithstanding any ambiguity in the stipulation regarding the initial intended duration of the benefits listed therein, Larsen remained responsible to pay Hutchison's medical expenses after the finding of permanent total disability.

¶ 10 However, we do not see that Larsen's responsibility to pay medical expenses is necessarily inconsistent with its right to seek reimbursement for those expenses thereafter. Indeed, the statutory provision itself shows that the two are consistent, stating that the employer is responsible to pay the medical benefits yet also providing that ERF will then reimburse the employer for a portion of those expenses. *See* Utah Code Ann. § 34A–2–703(2) (2005).[2] Further, although ERF argues that no reimbursement is required because Larsen agreed to pay "all" of the medical expenses, such a restrictive reading of the parties' stipulation is not supported by our prior decisions. *Cf. Medley*, 2004 UT App 179, ¶¶ 4, 10, 93 P.3d 847 (determining

that the parties' agreement for payments that were to be " '[i]n lieu of and as satisfaction of *any* claim either party ha[d] to alimony' " could not "be fairly construed to waive the right to *future* alimony in the event of a material change in circumstances, pursuant to the alimony provisions of the divorce statute" (first emphasis added)).[3]

¶ 11 Considering our above analysis, we do not see any indication here that Larsen waived its right to reimbursement from ERF for amounts paid to Hutchison. "We simply 'will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is "explicitly stated." More succinctly, the waiver must be clear and unmistakable.' " *Id.* ¶ 10 (quoting *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983)). The stipulation here is entirely silent concerning the possibility of reimbursement under section 34A–2–703. The stipulation contains neither a mention of the statute at issue nor even a reference to the general concept of reimbursement. Thus, no waiver was made here. *See id.* (determining that no waiver existed where "the stipulation made no reference to the statutory right ... allegedly waived, either by explicit reference to the statute or ... by a clear reference to the concept"),[4]

disability benefits."

2. It appears that Larsen also understood that it could accept responsibility to pay Hutchison's medical expenses yet still be entitled to reimbursement for a portion of those expenses. Although Larsen's counsel stated at the hearing that the benefits listed in the stipulation should continue, counsel immediately thereafter told the court that Larsen intended to seek reimbursement from ERF. Indeed, Larsen made persistent requests for reimbursement throughout the pendency of the proceedings, both before and after its agreement to pay Hutchison's medical expenses.

3. ERF cites to *Pacheco v. Industrial Commission*, 668 P.2d 553 (Utah 1983), as a case wherein the Labor Commission correctly refused to award interest provided for by statute where an interest provision was omitted from the parties' stipulation. This is, however, an inaccurate characterization of *Pacheco* because the court there did not ultimately decline to award statutory interest based on the parties' failure to include a provision for the interest in their stipulation. Instead,

the court declined to award interest based on the determination that the statutory provision requiring interest on "[a]wards made by the industrial commission" did not even apply to stipulations entered into by the parties. *See id.* at 554–55. Thus, *Pacheco* is an example of when a statutory provision did not apply under the circumstances, not an example of when a statutory right was waived when it was not provided for in a stipulation.

4. We note that the rule relied on here—that a waiver must be clear and unmistakable—is particularly appropriate under the circumstances of this case, where an employer was willing to enter into a stipulation so that the injured employee would be financially covered during the pendency of the litigation proceedings. Larson obtained no benefit from the stipulation's terms. Such altruistic behavior should be commended and encouraged; it should not create a danger for the employer that it may unintentionally be left holding the bag for amounts—over half a million dollars in this case—that ERF is statutorily required to repay.

and Larsen is entitled to reimbursement as provided for by statute.

## CONCLUSION

¶ 12 Nothing in the parties' stipulation limits or waives Larsen's right to seek the reimbursement provided for in Utah Code section 34A–2–703. It was therefore error for the Labor Commission to refuse to award Larsen the reimbursement sought. We reverse the determination of the Labor Commission and remand for the entry of an order of reimbursement to Larsen as provided for in Utah Code section 34A–2–703.[5]

¶ 13 WE CONCUR: J. FREDERIC VOROS JR., and MICHELE M. CHRISTIANSEN, Judges.

---

5. In addition to reimbursement of 50% of medical expenses after the first $20,000, *see* Utah Code Ann. § 34A–2–703(2) (2005), Larsen is enti-
tled to reimbursement for the weeks of benefits it paid after the initial 156 weeks, *see id.* § 34A–2–703(3)–(4).