2013 UT App 280

**Janet K. HALL, Petitioner and Appellee,**

v.

**Dennis R. HALL, Respondent
and Appellant.**

**No. 20120437–CA.**

Court of Appeals of Utah.

Nov. 21, 2013.

Rehearing Denied Jan. 9, 2014.

Nathan E. Burdsal and Hutch U. Fale, Attorneys for Appellant.

Lori W. Nelson and Brent A. Orozco, Attorneys for Appellee.

Senior Judge JUDITH M. BILLINGS authored this Opinion, in which Judges JAMES Z. DAVIS and STEPHEN L. ROTH concurred.[1]

Opinion

BILLINGS, Senior Judge:

¶ 1 Dennis R. Hall (Husband) appeals from the trial court's orders resulting from a contempt hearing initiated by Janet K. Hall (Wife). We affirm in part and reverse and remand in part.

---

1. The Honorable Judith M. Billings, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

## BACKGROUND

¶ 2 As part of their divorce in 2007, Husband and Wife reserved several issues to be dealt with in a subsequent stipulation. That later agreement (the Stipulation) was signed by the parties on March 23, 2010. Two days later, Wife's counsel sent a letter to Husband's counsel, clarifying her understanding that the cash value of all of the parties' life insurance policies would be equalized under the Stipulation. Husband's attorney responded with a list of fourteen life insurance policies that he understood would be equalized. Thereafter, the court signed a supplemental decree of divorce as a result of the Stipulation.

¶ 3 Later that summer, Wife sought the issuance of an order to show cause, arguing that Husband should be found in contempt for several acts of noncompliance with the Stipulation. Husband thereafter filed a response and also made several claims of contempt against Wife.

¶ 4 The trial court held an order to show cause hearing. At the hearing, the trial court (1) determined that the provision of the Stipulation requiring the equalization of the cash value of life insurance policies included the fourteen life insurance policies listed in Husband's attorney's letter, (2) clarified Husband's obligation regarding refinancing the marital property, (3) stated that Husband's claims of contempt regarding personal property and medical expenses were not adequately supported by the evidence, (4) found that neither party was in contempt, and (5) initially denied Wife an award of attorney fees but left open the possibility for her to resubmit an attorney fees request. Wife submitted a later request for attorney fees based both on her inability to pay and her status as having substantially prevailed on her claims. The trial court then awarded Wife attorney fees based on her inability to pay.

¶ 5 Husband raises several claims of error with the trial court's findings and conclusions resulting from the evidentiary hearing. Wife responds with an assertion that Husband's appeal was not timely filed.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 First, we address Wife's argument that Husband has not met the timing requirements set forth by rule 4 of the Utah Rules of Appellate Procedure, *see* Utah R.App. P. 4(a). "If an appeal is not timely filed, this court lacks jurisdiction to hear the appeal." *Serrato v. Utah Transit Auth.*, 2000 UT App 299, ¶ 7, 13 P.3d 616. "An appellate court's determination of whether it has jurisdiction to hear an appeal is a question of law." *State v. Norris*, 2002 UT App 305, ¶ 5, 57 P.3d 238 (citation and internal quotation marks omitted). We address this argument first because a determination that the appeal is untimely would be dispositive.

¶ 7 Second, Husband challenges the trial court's determination regarding the equalization of life insurance policies. The trial court determined that the relevant provision in the Stipulation was ambiguous and that the parties intended for the equalization to include all the life insurance policies listed in the letter send by Husband's attorney. "[W]hether a contract is ambiguous is a question of law, which we review for correctness. But where an appellate court finds that a contract is ambiguous and looks to extrinsic evidence to determine the intent of the parties, it must give deference to the lower court's findings of fact." *Watkins v. Henry Day Ford*, 2013 UT 31, ¶ 19, 304 P.3d 841 (citation and internal quotation marks omitted).

¶ 8 Third, Husband contests the trial court's interpretation of his obligations under the Stipulation relating to the refinancing of the marital home. However, due to actions taken while this appeal was pending, Husband now asserts, and we agree, that this issue is moot. We therefore do not address this issue on the merits.

¶ 9 Fourth, Husband argues that the trial court erred in determining that he had presented no evidence to support his claims of contempt against Wife regarding medical bills and certain personal property. Such legal conclusions are reviewed for correctness. *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

¶ 10 Fifth, Husband contests the award of attorney fees to Wife, arguing that the statute cited by the court does not allow an award based on Wife's inability to pay. "Generally, [w]e review a trial court's decision regarding attorney fees in a divorce proceeding for an abuse of discretion. However, the proper interpretation of a statute is a question of law. Thus, the interpretation of the attorney fee statute is reviewed for correctness." *Connell v. Connell*, 2010 UT App 139, ¶ 6, 233 P.3d 836 (alteration in original) (citations and internal quotation marks omitted).

## ANALYSIS

### I. Timeliness of Appeal

¶ 11 As an initial matter, we address Wife's argument that Husband's appeal was not timely filed. *See generally* Utah R.App. P. 4 (setting forth timing requirements for filing a notice of appeal). First, Wife relies on the dates that various orders were signed to determine whether the deadline for appeal was met. However, the applicable rule provides that "the notice of appeal . . . shall be filed with the clerk of the trial court within 30 days after *the date of entry* of the judgment or order appealed from." *Id.* R. 4(a) (emphasis added); *see also* Utah R. Civ. P. 58A(c) ("A judgment is complete and shall be deemed entered for all purposes, except the creation of a lien on real property, when it is signed *and filed*. . . ." (emphasis added)). Second, Wife alleges that Husband did not appeal from the April 30 contempt order until August 10. But the record shows that Husband filed his first notice of appeal on May 24—within the thirty-day time limit. Further, when a second order was entered July 11, primarily to put the word "Judgment" in the title but making no substantive changes to the prior order, Husband responded by filing another notice of appeal on August 10—again within the thirty-day time limit. Thus, Husband's appeal is timely.[2]

### II. Equalization of Life Insurance

¶ 12 The trial court determined that the provision regarding life insurance in the Stipulation was ambiguous and that the equalization was intended to include the value of all of the life insurance policies listed in the letter sent by Husband's attorney. In addressing the issue of facial ambiguity, the trial court must follow the two-part approach set forth in *Daines v. Vincent*, 2008 UT 51, ¶ 26, 190 P.3d 1269. First, when determining whether an ambiguity exists, the trial court must consider " 'any relevant evidence' " in order to avoid a determination that " 'is based solely on the "extrinsic evidence of the judge's own linguistic education and experience." ' " *Id.* (quoting *Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995)). Then, after the trial court has considered "evidence of contrary interpretations, the [trial court] must ensure that 'the interpretations contended for are reasonably supported by the language of the contract.' " *Id.* (quoting *Ward*, 907 P.2d at 268).[3]

¶ 13 The provision at issue here reads, in its entirety,

13. *Life Insurance.* The parties have life insurance policies, which shall be divided as follows:

a. [Husband] has a life insurance policy on his life with a face value of $1,000,000. It is fair and reasonable that [Husband] be ordered to maintain in full force and effect

---

2. Husband argues that Wife's timeliness objection is frivolous and requests an award of attorney fees pursuant to rule 33 of the Utah Rules of Appellate Procedure, *see* Utah R.App. P. 33(a). A frivolous filing "is one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." *Id.* R. 33(b). "The sanction for bringing a frivolous appeal is applied only in egregious cases," *Maughan v. Maughan*, 770 P.2d 156, 162 (Utah Ct.App.1989) (citation and internal quotation marks omitted), and we do not see that Wife's argument on this issue merits such a sanction.

3. There is some discussion by Husband of the Stipulation's integration clause. However, "integration clauses do not necessarily bar the introduction of extrinsic evidence." *Watkins v. Henry Day Ford*, 2013 UT 31, ¶ 25, 304 P.3d 841. The reliance on extrinsic evidence here is not to add to or vary the terms of the Stipulation with outside information but, instead, to clarify what the parties meant by terms that *were* included in the Stipulation.

the $1,000,000 life insurance policy on his life naming [Wife] as the beneficiary until such time as [Husband] pays off the property settlement owed by [Husband] to [Wife] as referred to herein. [Husband] should submit once a year to [Wife] proof that the policy is in full force and effect;

b. [Wife] has a life insurance policy on her life, which she is awarded;

C. Each of the life insurance policies has a cash value. The parties will equalize the difference in the cash value and [Husband] shall pay [Wife] one-half the difference within ninety (90) days of the signing of this Stipulation.

The parties disagree about which life insurance policies were intended to be covered by subsection (c). Wife argues that the subsection refers to all of Husband's and Wife's family life insurance policies, while Husband argues that it refers to only the two policies discussed specifically in subsections (a) and (b).

¶ 14 We first consider the relevant extrinsic evidence to determine whether the Stipulation is ambiguous. Wife primarily relies on correspondence between her attorney and Husband's attorney. Two days after the parties signed the Stipulation, Wife's attorney sent a letter to Husband's attorney, stating,

[W]e need to clarify that all insurances will be equalized and [Wife] gets one-half. Not just [Wife's] and [Husband's] policies. [Wife] is aware that [Husband] has been putting money away into several policies for an extended period of time for himself and the children. This is marital money and is appropriately divided.

Husband's attorney responded, providing a list of fourteen life insurance policies and stating, "It is my understanding that these policies are the policies to be equalized." Based on this response, Wife's attorney sent Husband's attorney a calculation of the equalized amount and a request for payment. Neither Husband nor his attorney questioned

or objected to this calculation prior to the proceedings on Wife's order to show cause.

¶ 15 Husband argues that this evidence is not relevant because nowhere in the letters do the parties specify that they are discussing the Stipulation. However, the letter seeking clarification was sent just two days after the Stipulation was signed and it addressed other responsibilities of the parties that were set forth in separate provisions of the Stipulation. Husband also argues that the equalization that the parties discussed in the letters was in reference to the valuation of the business. But we do not see, nor does Husband point us to, any language in the Stipulation or other correspondence that mentions equalizing family life insurance policies as part of the business valuation and corresponding payout to Wife. Thus we see no error in the trial court's consideration of this evidence as relevant.

¶ 16 Although this extrinsic evidence clearly supports the interpretation for which Wife contends—that the parties intended to equalize the cash value of all their family life insurance policies—Husband claims that this interpretation is not reasonably supported by the Stipulation's language. We conclude that the contract language itself supports the interpretation advanced by Wife. Section 13 contains initial language that purports to divide the parties' "life insurance policies," which phrase could reasonably be argued to encompass all of the parties' policies. Then, subsection (c) equalizes "each of the life insurance policies," which could reasonably be interpreted to refer to the "life insurance policies" mentioned in section 13 prior to the colon that introduces the subsections.

¶ 17 Husband argues that the life insurance policies referenced in section 13(c) include only the one policy specifically mentioned in subsection (a) and the one policy specifically mentioned in subsection (b). However, Husband acknowledges that his attempt to comply with subsection (a) has resulted in keeping Wife as the beneficiary of not one policy with a value of $1,000,000, but multiple policies that total $1,000,000.[4] Thus,

4. Husband argues that "the $1,000,000 life insurance policy" was intended by both parties to refer to Husband's largest life insurance policy,

notwithstanding the fact that the policy had a face value of less than $1,000,000. But under this interpretation, Husband would be required

his current interpretation of subsection (a) as referencing a single policy is somewhat inconsistent. It appears just as likely, if not more likely, that the separate subsections were dealing with three different aspects of life insurance policies—subsection (a) outlining insurance protection Wife should enjoy until the property settlement was paid off, subsection (b) awarding a specific policy to Wife, and subsection (c) determining that all of the parties' life insurance policies should be equalized.

¶ 18 Thus, the trial court correctly considered extrinsic evidence, found ambiguity in the provision, and determined that Wife's interpretation was supported by the Stipulation's language. We conclude the trial court's determination as to the parties' intended meaning of section 13 of the Stipulation was not an abuse of discretion.

### III. Refinancing

¶ 19 Originally, Husband argued on appeal that the trial court erred in its interpretation of the parties' refinancing obligations under the Stipulation. However, in his reply brief, Husband states that he has followed the trial court's direction and has paid off the second loan on the marital property. We agree with Husband that the refinancing issue is now moot and that we need not address this issue on appeal. *See generally Osguthorpe v. Osguthorpe*, 872 P.2d 1057, 1058 (Utah Ct.App. 1994) ("A case is moot when the requested relief cannot affect the rights of the litigants. Generally, we do not consider mooted questions on appeal." (citation omitted)).

### IV. Husband's Contempt Motion

¶ 20 Husband argues that the trial court erred in failing to find Wife in contempt due to her failure to pay certain dependent medical expenses and give Husband certain personal property as required by the Stipulation. Utah Code section 78B–6–302 requires that for a claim of indirect contempt, that is, when the contempt occurs outside the presence of the court, "an affidavit or statement of the facts by a judicial

officer shall be presented to the court or judge of the facts constituting the contempt." Utah Code Ann. § 78B–6–302(2) (LexisNexis 2012). This affidavit requirement is jurisdictional. *Iota, LLC v. Davco Mgmt. Co.*, 2012 UT App 218, ¶ 35, 284 P.3d 681. Husband argues that because he submitted such an affidavit and because Wife presented no counter-evidence at the hearing, the trial court should have found Wife in contempt on these issues.

¶ 21 However, we are not convinced by Husband's argument that the affidavit alone shifts the burden of proof to the party who is alleged to be in contempt. We see no support for this position in the relevant statutes or in the cases Husband cites. Indeed, all the cases Husband cites that touch on the burden of proof also involve issuances of orders to show cause and do not indicate that the burden shifted prior to the issuances of those orders. *See, e.g., Thomas v. Thomas*, 569 P.2d 1119, 1120 (Utah 1977) ("On June 26, 1974, the defendant was before the court in response to an order to show cause why he had not delivered the stock."); *De Yonge v. De Yonge*, 103 Utah 410, 135 P.2d 905, 905 (1943) ("Appellant failed to make any payments after August 29, 1941, whereupon the court issued an order to show cause why he should not be held in contempt of court for failure to comply with the order."). Indeed, one cited case seems to specifically tie the shift of burden to the order to show cause:

> An order to show cause is an order from the court, directed to the defendant to appear and show cause why he should not be held in contempt for willfully disobeying the previous order of the court. While it is true that an order to show cause will not issue except upon an affidavit that a party has violated or disobeyed the court's orders, *once issued,* the burden is on the defendant to present evidence with respect to the three [contempt] elements. . . .

*Coleman v. Coleman*, 664 P.2d 1155, 1156–57 (Utah 1983) (per curiam) (emphasis added) (additional emphasis omitted).

to keep Wife as the full beneficiary of this largest policy, an action which he has admittedly not done. Instead, he has made Wife a 67% benefi-

ciary of this largest policy and a 100% beneficiary of some smaller policy.

¶ 22 More importantly, claims of indirect contempt require extra procedural protections that would not be necessary were the contempt committed in the presence of the court. *Von Hake v. Thomas*, 759 P.2d 1162, 1170 (Utah 1988).

> The due process provision of the federal constitution requires that in a prosecution for a contempt not committed in the presence of the court, the person charged be advised of the nature of the action against him [or her], have assistance of counsel, if requested, have the right to confront witnesses, and have the right to offer testimony on his [or her] behalf.

*Id.* (alterations in original) (citation and internal quotation marks omitted). Although Husband never moved for an order to show cause based on his contempt claims, the contempt claims were included in the parties' stipulated list of issues to be addressed at the evidentiary hearing. Thus, Wife should have been *prepared* to present a defense to these allegations. However, we are not convinced that Wife had a true opportunity to present her defense under the circumstances. During the evidentiary hearing, Husband failed to introduce as evidence, or even mention, his affidavit alleging contempt, notwithstanding the trial court's assertion that there had been no evidence presented regarding either the children's medical expenses or the personal property, which were the basis of these contempt claims. Instead, Husband raised the existence of his affidavit by a general reference in a post-hearing brief. Such circumstances did not afford Wife an adequate opportunity to offer evidence and testimony on her behalf and do not meet the due process requirements.[5]

¶ 23 Thus, we are not persuaded by Husband's argument that the existence in the record of his affidavit alleging contempt was sufficient to shift the burden of proof to Wife. Nor are we convinced that the circumstances of this case afforded Wife an adequate opportunity to present evidence in her defense where Husband wholly failed to present evidence of his allegations of contempt at the hearing. We therefore see no error in the trial court's ruling on this matter.

## V. Attorney Fees

¶ 24 Husband next argues that the trial court erred in awarding attorney fees under Utah Code section 30–3–3(1), which provides that fees may be awarded "in any action *to establish* an order of custody, parent-time, child support, alimony, or division of property in a domestic case," Utah Code Ann. § 30–3–3(1) (LexisNexis Supp. 2013) (emphasis added). He argues that any attorney fees awarded in this case must be awarded under section 30–3–3(2), which covers actions *enforcing* these types of orders and requires a finding that a party "substantially prevailed upon the claim or defense," *see id.* § 30–3–3(2).

¶ 25 Wife responds that the attorney fees here were incurred in establishing an order. Although this is true, the order established was not "an order of custody, parent-time, child support, alimony, or division of property in a domestic case," *see id.* § 30–3–3(1). The original divorce decree was such an order. Instead, the order established was to force compliance with the prior divorce decree. Indeed, Wife concedes that the current order "enforced terms of the [original decree]" and "did not amend its terms in any respect." Also, the trial court characterized the order here as one "requiring [Husband] to comply with the terms of the Decree of Divorce." These type of actions for enforcement are addressed by subsection (2) as opposed to subsection (1). *See* Utah Code Ann. § 30–3–3; *see also, e.g., Grindstaff v. Grindstaff*, 2010 UT App 261, ¶ 12, 241 P.3d 365 (applying Utah Code section 30–3–3(2) to a request of attorney fees after prevailing on an order to show cause). Thus, the trial court erred in awarding attorney fees based on subsection (1) and we reverse the award.

¶ 26 Admittedly, this is a unique situation because the order to show cause not only

---

5. Under similar reasoning, we reject Husband's argument that regardless of whether the burden of proof shifted to Wife, he should have still prevailed because Wife never contradicted the evidence set forth in his affidavit. Husband never introduced this evidence at the hearing, even in the face of the trial court's assertion that no evidence regarding these matters had been presented.

sought enforcement of the divorce decree but, as a necessary first step, sought clarification of ambiguous terms within the decree.[6] Nonetheless, in prior similar cases, we have consistently applied the attorney fee provisions relevant to the enforcement of domestic orders. *See, e.g., Osborne v. Osborne,* 2011 UT App 150, ¶¶ 8, 10, 260 P.3d 202 (affirming an attorney fees award under Utah Code section 30-3-3(2) where the case involved the "interpretation and enforcement of the domesticated Decree"); *Larsen v. Larsen,* 2003 UT App 408U, para. 8, 2003 WL 22814061 (upholding an award of attorney fees not based on financial need where "the Order to Show Cause was necessary to enforce an ambiguous provision in the divorce decree"); *Moon v. Moon,* 1999 UT App 12, ¶¶ 18, 33, 973 P.2d 431 (treating a case "presenting a question of the proper construction of the original divorce decree" as one of enforcement for purposes of attorney fees); *Lyngle v. Lyngle,* 831 P.2d 1027, 1030-31 (Utah Ct.App.1992) (stating, in a case where the divorce decree was ambiguous, "Wife is not seeking to obtain or modify a divorce decree but to enforce the provisions of a decree she obtained in 1986. In an action to enforce the provisions of a divorce decree, an award of attorney fees is based solely upon the trial court's discretion, regardless of the financial need of the moving party.").

¶ 27 Although Wife requested attorney fees based both on financial need and her claim that she substantially prevailed, the trial court's order based the award on financial need. Further, the trial court crossed out a proposed finding that stated, "The court also finds [Wife] substantially prevailed in the litigation and that an award of fees is justified on that basis as well." However, it is not clear if the trial court's action was based on the court's erroneous belief that only an analysis under financial need was

applicable here or if it was instead due to a determination that Wife did not substantially prevail. Indeed, other language of the award signals a determination that Wife was successful on her claims: "The court further finds that ... but for the pursuit of the action there would not be an order in place requiring [Husband] to comply with the terms of the Decree of Divorce."

¶ 28 Because we cannot determine why the trial court did not award fees under Utah Code section 30-3-3(2), we remand to the trial court to make findings of fact and conclusions of law related to this issue. However, we do not intend to suggest or endorse any specific outcome on the attorney fees issue. We recognize that an attorney fees award granted under section 30-3-3(2) would be within the wide discretion of the trial court, *see Grindstaff,* 2010 UT App 261, ¶ 12, 241 P.3d 365 ("[T]rial courts have significant discretion in awarding or declining to award attorney fees for actions to enforce court orders."), and that the trial court may consider a variety of factors in determining whether Wife substantially prevailed, *see, e.g., Larsen,* 2003 UT App 408U, para. 8 (upholding an award based on the trial court's reasoning that "although Wife did not prevail entirely upon her claim, she was entitled to an award of 50% of her attorney fees because the Order to Show Cause was necessary to enforce an ambiguous provision in the divorce decree").[7]

## VI. Erroneous Findings

¶ 29 As an alternative argument regarding attorney fees, Husband challenges some trial court findings related to Wife's need and Husband's ability to pay. Although we need not reach this issue in light of our determination on the attorney fees award, we choose to briefly address the matter under the circumstances.

---

6. Due to this unique posture, we reject Husband's assertion that Wife's arguments on this subject are frivolous and merit an award of attorney fees to him.

7. At oral argument, Wife's counsel made a request for an award of attorney fees incurred on appeal. Because this request was not made in Wife's brief, we deny the request. *See GDE*

*Constr., Inc. v. Leavitt,* 2012 UT App 298, ¶ 25 n. 8, 294 P.3d 567 (rejecting a party's request for attorney fees incurred on appeal where the request was raised for the first time at oral argument). *See generally* Utah R.App. P. 24(a)(9) (requiring a request for an award of attorney fees to be explicitly stated in an appellant's opening brief).

¶ 30 The trial court made conflicting findings regarding Husband's net worth. In the findings from the March 6 order, his net worth is listed as $2,148,705; but the findings from the May 16 order list his net worth as $1,240,000. Both parties agree, and the evidence supports, that the lower number is correct and that the higher number came from erroneously referencing the wrong number on a statement of Husband's assets and liabilities.

¶ 31 Because of this obvious error and because the parties contest other figures in the trial court's assessments regarding their financial situations, we vacate those findings of the trial court regarding Wife's need and Husband's ability to pay that are found in the Order on Award of Attorney Fees. Thus, if similar issues arise in future proceedings, the trial court should reconsider these financial issues anew at that time.

## CONCLUSION

¶ 32 We first conclude that Husband's appeal was timely filed. We also conclude that the trial court's determination regarding ambiguity in section 13 of the Stipulation was correct and that the court did not abuse its discretion in its interpretation of the ambiguous provision. Furthermore, we do not see any error in the trial court's conclusions regarding Husband's contempt claims related to medical bills and personal property. We make no determination on Husband's claim regarding refinancing because it is now moot. Finally, we reverse the trial court's award of attorney fees under Utah Code section 30-3-3(1), vacate the related findings regarding Wife's need and Husband's ability to pay, and remand to the trial court for a determination of whether Wife should be awarded attorney fees under Utah Code section 30-3-3(2).