2019 UT App 60

## THE UTAH COURT OF APPEALS

CAMERON MICHAEL COX,
Appellee,
*v.*
PAIGE CHARISSA HEFLEY,
Appellant.

Opinion
No. 20170903-CA
Filed April 18, 2019

Second District Court, Ogden Department
The Honorable W. Brent West
No. 134901221

David Pedrazas, Attorney for Appellant

Lauren Forsyth and Kristopher K. Greenwood,
Attorneys for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES JILL M. POHLMAN and RYAN M. HARRIS concurred.

APPLEBY, Judge:

¶1     Paige Charissa Hefley appeals the district court's order on competing petitions filed by Hefley and her former spouse, Cameron Michael Cox, to modify their divorce decree. She argues that the court erred by enforcing their stipulation (the Stipulated Decree). We affirm.

BACKGROUND

¶2     Cox and Hefley divorced in February 2014. The original divorce decree awarded Cox primary physical custody of their two minor children subject to Hefley's "reasonable parent-time." In a separate December 2015 case, Hefley was deemed a

"vexatious litigant"[1] and ordered "to obtain legal counsel before filing any future claim for relief, and to furnish security to assure payment of any opposing party's reasonable expenses" (the Vexatious Litigant Order).

¶3 In January 2015, Hefley petitioned the district court to modify custody and parent-time. Cox counter petitioned, also requesting modifications to custody and parent-time. After more than two years of litigation on their competing petitions, Cox and Hefley signed the Stipulated Decree, which represented "a full and final agreement regarding all pending issues." It stated, "Both parties . . . stipulate to be fully bound by the following terms and conditions."

¶4 The Stipulated Decree "entitled [Hefley] to parent-time as the parties may agree in writing." But absent such agreement, Hefley would receive three days of unsupervised parent-time on alternating weeks. Hefley's unsupervised parent-time was conditioned on her complying with the following terms: (1) "submit to a comprehensive psychological evaluation by a qualified licensed psychologist" and obtain a "diagnosis, a therapy/treatment plan, and a medication plan"; (2) "initiate, maintain and successfully complete all treatment recommendations, medication recommendations, and related items"; (3) not have "any criminal charges, suicide attempts, or

---

1. Under rule 83 of the Utah Rules of Civil Procedure, "[a] court may find a person to be a vexatious litigant if the person, without legal representation, undertakes any of four types of vexatious conduct described in the rule, such as repeatedly filing nonmeritorious claims." *Strand v. Nupetco Assocs. LLC*, 2017 UT App 55, ¶ 6, 397 P.3d 724; *see also* Utah R. Civ. P. 83(a). Further, "[r]ule 83 authorizes a court to impose restrictive orders . . . to curb the litigant's vexatious conduct." *Strand*, 2017 UT App 55, ¶ 5; *see also* Utah R. Civ. P. 83(b).

mental health hospitalizations"; (4) "not have any illegal and/or un-prescribed drugs or medications in her home, nor allow the children to be in the presence of any person who is under the influence of any illegal drugs or un-prescribed medications"; and (5) not "permit the children to be around domestic violence."

¶5 Cox and Hefley agreed to hire "a different licensed psychologist . . . to act as a third party neutral and mental health professional . . . to work with the parties to ensure that [Helfey] [was] following the court's orders." The Stipulated Decree required that the third party neutral have access to Hefley's medical records and be allowed to meet with the "parties' minor children and any other relevant party in this action, when necessary." If Hefley failed to comply with the terms of the Stipulated Decree, the parties agreed that supervised parent-time would "be imposed until all appropriate treatment is recommended, complied with, completed, and the third party neutral has no safety concerns for the minor children." The Stipulated Decree also provided, "If the parties do not comply with these terms, the third party neutral may make further restrictions to parent-time arrangements as deemed necessary." Hefley agreed that she "shall not file any type of petition to modify in this case until she has successfully completed the terms and conditions stated herein, and complies with the [Vexatious Litigant Order]."

¶6 About one month after Hefley signed the Stipulated Decree, Cox filed it with the district court. The next day, Hefley filed an "objection to entry of modified decree of divorce" and "motion to strike [the Stipulated Decree]." Hefley asserted that her attorney was not aware of and had not approved the Stipulated Decree until after she signed it, and claimed Cox's attorney "purposely went around [her attorney] and/or completely failed to seek his approval . . . prior to submitting the [Stipulated Decree] before the court." Further, Hefley argued

that the "terms of the [Stipulated Decree] are completely contrary to Utah law." Specifically, she claimed the Stipulated Decree "transfer[s] the court's judicial authority to a nonqualified individual to make legal rulings without being subjected to review by [the] court" and "unreasonably restricts [Hefley] from filing any petition to modify if it is in the best interest of the children."

¶7     On September 26, 2017, the district court held a telephone conference at which it denied Hefley's motion to strike the Stipulated Decree, overruled her objection to entry of the Stipulated Decree, and said it would sign the Stipulated Decree as it had been submitted. The court also instructed Cox's attorney to "prepare an order." On the same day of the telephone conference, the court signed and entered the Stipulated Decree.

¶8     On October 18, 2017, the district court signed and entered a proposed order on the telephone conference. It provided: (1) "[Hefley's] objection to the entry of the [Stipulated Decree] is overruled"; (2) "[Hefley's] motion to set aside the [Stipulated Decree] is denied"; and (3) "the court approved the stipulation of the parties and will sign the order on the [Stipulated Decree] as it has been submitted."

¶9     Hefley filed a notice of appeal on November 8, 2017, giving notice of her appeal of the order on the telephone conference and the Stipulated Decree.

ISSUES AND STANDARDS OF REVIEW

¶10     First, Cox argues that this court lacks jurisdiction because Hefley's "notice of appeal on the modified decree of divorce was untimely." "An appellate court's determination of whether it has jurisdiction to hear an appeal is a question of law." *Hall v. Hall*, 2013 UT App 280, ¶ 6, 316 P.3d 970 (quotation simplified). "We

address this argument first because a determination that the appeal is untimely would be dispositive." *Id.*

¶11    Second, Hefley argues that the district court erred in denying her motion to strike the Stipulated Decree because her attorney did not receive or review it until after she signed it. "[A] district court's decision to enforce a stipulation is reviewed for an abuse of discretion." *Prinsburg State Bank v. Abundo*, 2012 UT 94, ¶ 10, 296 P.3d 709.

¶12    Third, Hefley argues that the court erred in entering the Stipulated Decree because its provisions are "contrary to Utah law." "Although this court generally reviews the determination to modify a divorce decree for an abuse of discretion, insofar as that determination is based on a conclusion of law, we review it for correctness." *Id.* (quotation simplified).

ANALYSIS

I. Timeliness of Appeal

¶13    Cox argues that this court lacks jurisdiction because Hefley's notice of appeal was not timely filed. We disagree.

¶14    "An appeal may be taken from . . . all final orders and judgments . . . by filing a notice of appeal . . . ." Utah R. App. P. 3(a). Under the Utah Rules of Appellate Procedure, the notice of appeal "shall be filed with the clerk of the [district] court within 30 days after the date of entry of the judgment or order appealed from." *Id.* R. 4(a). "If an appeal is not timely filed, this court lacks jurisdiction to hear the appeal." *Hall v. Hall*, 2013 UT App 280, ¶ 6, 316 P.3d 970 (quotation simplified).

¶15    The timeliness of Hefley's notice of appeal turns on when the district court entered a final and appealable order in this case. Cox argues that the final order was the Stipulated

Decree, which was entered on September 26, 2017. Hefley disagrees, arguing that the final order was the order on the telephone conference, which was entered on October 18, 2017. Hefley filed her notice of appeal on November 8, 2017—more than thirty days after the Stipulated Decree was entered, but less than thirty days after the order on the telephone conference was entered.

¶16    "For an order or judgment to be final, it must dispose of the case as to all the parties, and finally dispose of the subject-matter of the litigation on the merits of the case." *Bradbury v. Valencia*, 2000 UT 50, ¶ 9, 5 P.3d 649 (quotation simplified). That is, "a judgment is final when it ends the controversy between the parties." *Id.* (quotation simplified). "[W]here further action is contemplated by the express language of [an] order, it cannot be a final determination susceptible of enforcement." *State v. Leatherbury*, 2003 UT 2, ¶ 9, 65 P.3d 1180.

¶17    At the telephone conference, the district court overruled Hefley's objection to entry of the Stipulated Decree, denied her motion to strike the Stipulated Decree, and said it would sign the Stipulated Decree as it had been submitted. But at that time, the court also instructed Cox's counsel to prepare a separate order reflecting its decisions. Thus, although the court signed and entered the Stipulated Decree on September 26, "further action [was] contemplated" by the court because it had instructed Cox's counsel to prepare a separate order. *See id.* (determining that a "signed minute entry" was not a final order when it required counsel to "prepare Findings of Fact and Conclusions of Law" (quotation simplified)); *see also* Utah R. Civ. P. 58A(e)(1) ("*If a separate document is not required*, a judgement is complete and is entered when it is signed by the judge and recorded in the docket." (emphasis added)). For that reason, we conclude that the thirty day period to file a notice of appeal did not begin to run when the district court signed and entered the Stipulated Decree.

¶18 Instead, the thirty day period began to run when the court entered the order on the telephone conference. That order disposed of the case and ended the controversy between the parties. *See Bradbury*, 2000 UT 50, ¶ 9. And because the notice of appeal was filed within thirty days after the court entered the order on the telephone conference, this court has jurisdiction to hear Hefley's appeal.

## II. The Motion to Strike

¶19 Hefley argues that the district court erred in denying her motion to strike the Stipulated Decree. We disagree.

¶20 To start, we reject Hefley's claim that the Stipulated Decree "should have been stricken" because it "was never signed by an attorney of record." The Stipulated Decree is simply an agreement to settle the parties' dispute. *See Klein v. Klein*, 544 P.2d 472, 476 (Utah 1975) (explaining that when parties enter "a stipulation pertaining to matters of divorce [and] custody," "the same rules apply to binding [them] to such an agreement as apply to any other agreement"). District courts have "the power to enter a judgment enforcing a settlement agreement if it is an enforceable contract." *Goodmansen v. Liberty Vending Sys., Inc.*, 866 P.2d 581, 584 (Utah Ct. App. 1993).

¶21 Hefley does not dispute that she understood and voluntarily agreed to the Stipulated Decree. *See Klein*, 544 P.2d at 476 (affirming a district court's decision to enter the parties' stipulation when the district court "was not convinced that the plaintiff did not understand and voluntarily agree to the stipulation").[2] Contrary to her assertions, litigants may enter a

---

2. Hefley asserts that her failure to consult counsel before signing the Stipulated Decree is particularly "distressing" because Cox had previously claimed that she "is mentally unstable." We decline to address this issue because Hefley has not preserved it

(continued…)

stipulation or settlement agreement without first obtaining the consent of—or even consulting—their attorneys. *See John Deere Co. v. A & H Equip., Inc.*, 876 P.2d 880, 887 (Utah Ct. App. 1994) (determining that a settlement agreement "was enforceable despite the fact that it had not been reduced to writing [or] signed by the parties," "nor did the attorneys of record sign and submit to the court a written stipulation"). Thus, we reject Hefley's claim that the district court should have rejected the Stipulated Decree because it was not signed by the parties' attorneys.

¶22 Next, Hefley asserts that Cox's attorney acted "inappropriately" and in violation of the Utah Rules of Professional Conduct. This argument is equally unavailing. As this court has previously explained, "[w]hile compliance with the Utah Standards of Professionalism and Civility is encouraged of all attorneys, an attorney's failure to comply is not grounds for setting aside a judgment." *Aghdasi v. Saberin*, 2015 UT App 73, ¶ 9, 347 P.3d 427. We stop well short of determining that Cox's attorney violated any professional rule. But even if we were to accept Hefley's assertion that Cox's attorney "violate[d] the Utah Rules of Professional Conduct," that conclusion, by itself, would not require reversal in this case. *See id.*

¶23 In short, we affirm the district court's decision to deny Hefley's motion to strike the Stipulated Decree.

---

(…continued)

for appeal. *See Sandusky v. Sandusky*, 2018 UT App 34, ¶ 37, 417 P.3d 634 ("An issue is preserved for appeal only if it was presented to the [district] court in such a way that [the court] had an opportunity to rule on it." (quotation simplified)). Hefley never suggested to the district court that mental instability prevented her from understanding or voluntarily entering the Stipulated Decree.

III. The Terms of the Stipulated Decree

¶24    Hefley argues that the district court erred in entering the Stipulated Decree because its terms are contrary to Utah law. First, she contends that the Stipulated Decree authorizes the third party neutral to "restrict [her] parent-time and custody . . . based upon arbitrary and capricious decisions that are unreviewable by the court." Second, she claims the Stipulated Decree "unreasonably restricts [her] from filing a petition to modify in this matter."[3] As explained below, we reject both of these arguments.

A.    The Third Party Neutral

¶25    Hefley argues that the Stipulated Decree "transfer[s] the court's judicial authority to a nonqualified individual to make legal rulings without being subjected to review by the court." We disagree.

¶26    Although "[t]he variety of agreements that disputing parties may reach is so vast as to defy cataloging them," *In re E.H.*, 2006 UT 36, ¶ 20, 137 P.3d 809, "there are certain agreements that so compromise the core responsibilities of the court that they cannot be honored," *id.* ¶ 21. For example, parties may not enter an agreement that strips "the district court of its statutory charge to ensure that any custody arrangement or

---

3. Hefley also argues that the Stipulated Decree "does not follow the Uniform Deployed Parents Custody, Parent Time, and Visitation Act." *See* Utah Code Ann. §§ 78B-20-101 to -503 (LexisNexis 2018). But she has failed "to explain, with reasoned analysis supported by citations to legal authority and the record," why she should prevail on this claim on appeal. *Chaparro v. Torero*, 2018 UT App 181, ¶ 32, 436 P.3d 339 (quotation simplified). Because this argument has been inadequately briefed, we do not address it further. *See id.*

change of custody serves the child's best interest." *R.B. v. L.B.*, 2014 UT App 270, ¶ 16, 339 P.3d 137.

¶27 Contrary to Hefley's assertions, the Stipulated Decree does not allow the third party neutral to make legal rulings free of the district court's review. In fact, it provides that the third party neutral cannot "make court orders." As Cox asserts in his brief, "the third party is not . . . appointed to render an award or to resolve the case, but is there to make sure the parties comply with what they agreed to."

¶28 The district court approved Cox and Hefley's agreement to condition Hefley's unsupervised parent-time on her compliance with various terms. Essentially, the parties stipulated—and the court agreed—that, if certain conditions were not satisfied, then supervised parent-time would be appropriate. *See* Utah Code Ann. § 30-3-34.5 (LexisNexis Supp. 2018) (establishing that "a court may order supervised parent-time if the court finds evidence that the child would be subject to physical or emotional harm or child abuse . . . if left unsupervised with the non-custodial parent"). The purpose of the third party neutral is "to act as a buffer between [Cox and Hefley] . . . so that [they] do not need to pry into the personal records of the other" and "to make sure [they] are completing and in compliance with the terms of [the Stipulated Decree]."

¶29 There is nothing wrong with this arrangement. The parties entered the Stipulated Decree to settle their dispute and advance the best interest of their children. We agree with Cox that he and Hefley were free to agree on a parent-time plan that "would work for them." *See In re E.H.*, 2006 UT 36, ¶ 20 (noting that "the law favors the settlement of disputes"); *see also* Utah Code Ann. § 30-3-33(1) ("Parent-time schedules mutually agreed upon by both parents are preferable to a court-imposed solution."). "[P]arties may plan for contingencies and develop

mechanisms to assess a child's best interest outside of the court system." *R.B.*, 2014 UT App 270, ¶ 16.

¶30    Further, we disagree with Hefley's claim that the third party neutral's decisions regarding parent-time "are unreviewable by the court." The Stipulated Decree does not intrude on the court's "continuing jurisdiction to make subsequent changes or new orders . . . as is reasonable and necessary." Utah Code Ann. § 30-3-5(3). "[T]his court has previously explained that where the parties' stipulation is accepted by the [district] court and incorporated into its divorce order, the subject matter of the stipulation is within the continuing jurisdiction of the court." *Sill v. Sill*, 2007 UT App 173, ¶ 11, 164 P.3d 415 (quotation simplified). And "even when the parties in a custody dispute agree to be bound by an evaluator's findings, the district court retains the ultimate authority to preside over the proceedings, to satisfy itself that the evaluator's recommendations were properly arrived at, and to enter a final order." *R.B.*, 2014 UT App 270, ¶ 14 (quotation simplified).

¶31    Here, by approving the Stipulated Decree, the court "merely agreed to follow a process for the determination of the best interests of [the children] and to uphold this process so long as it adequately served that end." *In re E.H.*, 2006 UT 36, ¶ 21. Indeed, Cox acknowledges that each party may file objections and motions, request relief from the court, and seek judicial review of any action taken by the third party neutral. Hefley gives us no reason to conclude otherwise. Thus, we reject her argument that the Stipulated Decree allows the third party neutral "to make legal rulings without being subjected to review by the court."

B.    Petitions to Modify

¶32    Hefley argues that the Stipulated Decree "unreasonably restricts [her] from filing any petition to modify in this matter."

Specifically, she claims "it prevents the court from ever addressing the best interest of the children or change in circumstances, even in the case of abuse and/or neglect." We also reject this argument.

¶33    "[P]arties cannot stipulate away the district court's statutory responsibility to conduct a best-interest analysis . . . to ensure that any custody arrangement . . . serves the child's best interest." *R.B. v. L.B.*, 2014 UT App 270, ¶ 16, 339 P.3d 137; *see also Sill v. Sill*, 2007 UT App 173, ¶ 9, 164 P.3d 415 (determining that a "non-modification provision did not divest the court of its continuing jurisdiction" to consider a petition to modify alimony).

¶34    Here, the relevant language provides that Hefley "shall not file any type of petition to modify in this case until she has successfully completed the terms and conditions stated herein, and complies with the [Vexatious Litigant Order]." On appeal, Cox argues that this provision does not prevent Hefley from filing a petition to modify the Stipulated Decree. Instead, he asserts it requires only that Hefley comply with the Vexatious Litigant Order before filing such a petition. We agree with Cox that Hefley would be required to comply with the Vexatious Litigant Order "regardless of it being in the [Stipulated Decree]."

¶35    By statute, the district court "has continuing jurisdiction to make subsequent changes or new orders for the custody of a child and the child's support . . . as is reasonable and necessary." Utah Code Ann. § 30-3-5(3) (LexisNexis Supp. 2018). Thus, although Hefley must comply with the Vexatious Litigant Order, she may petition to modify the Stipulated Decree if "there have been changes in the circumstances upon which the previous award was based that are sufficiently substantial and material to justify reopening the question." *See Blocker v. Blocker*, 2017 UT App 10, ¶ 11, 391 P.3d 1051 (quotation simplified).

¶36    In sum, we conclude that the terms of the Stipulated Decree are not contrary to Utah law.

## CONCLUSION

¶37    This court has jurisdiction over Hefley's appeal. The district court did not err in denying Hefley's motion to strike the Stipulated Decree, and the terms of the Stipulated Decree are not contrary to Utah law. Accordingly, we affirm.

————————